## STAFFORD OWNERS, Inc., v. UNITED STATES.

### No. K–101.

Court of Claims.
April 7, 1930.

Chester A. Gwinn, of Washington, D. C. (Humphreys & Gwinn, of Washington, D. C., on the brief), for plaintiff.

Arthur J. Iles, of Indianapolis, Ind., and Charles F. Kincheloe, of Washington, D. C., for the United States.

Argued before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GREEN, and GRAHAM, Judges.

BOOTH, Chief Justice.

The Commissioner of Internal Revenue assessed against and collected from the plaintiff a capital stock tax of $450. A refund claim seasonably filed was denied, and this suit is to recover the tax paid, with interest thereon. No jurisdictional issue is involved.

The Revenue Act of 1921 (42 Stat. 227, 294) contains the following provisions:

"Sec. 1000 (a). That on and after July 1, 1922, in lieu of the tax imposed by section 1000 of the Revenue Act of 1918—

"(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included."

Section 700(a) of the Revenue Act of 1924 (43 Stat. 325, 26 USCA 223 note) is substantially the same.

The plaintiff was incorporated under the laws of Delaware in July, 1920. Since 1921 it has held the legal title to a co-operative apartment house at 1789 Lanier Place N. W., in Washington, D. C. The activities of the corporation are confined to a single purpose. The authorized capital stock of $95,250 is owned proportionately by sixteen apartment tenants, having been subscribed for by them on the basis of the ultimate purchase price of each individual's apartment; the enterprise itself being exclusively directed towards the purchase and ownership of an apartment, rather than the payment of a fixed rental for occupancy. The stock is nonnegotiable and nonmarketable; it possesses no earning power or loan value, and has never paid a dividend. The plaintiff holds the legal title to the premises for the convenience of the stockholders, each of whom has an equitable and beneficial ownership of all the apartments in the building. A person wishing to purchase an apartment in the building subscribes for the amount of stock representing the purchase price of the apartment chosen. If subsequently for any cause such a purchaser desires to sell his interest in the apartment purchased, it may be done by the assignment of the stock. A stock subscriber may also rent his apartment; the rent being paid to and received by the owner and not the corporation. A monthly assessment is laid against each stockholder sufficient in amount to discharge his pro rata obligation of the cost of janitor service, management, light, heat, repairs, water, insurance, taxes, interest, and amortization of mortgages. The corporation derives no substantial profit save an inconsequential amount of interest on bank deposits, and has no income from any source other than as above set forth. Its affairs, of course, are administered by a board of directors chosen by the stockholders, and its only salaried employees are the house manager and the janitor.

The apartment owned is known as "The Stafford." It was purchased in 1921; the issued capital stock representing the purchase price. The first and second trusts on the building have been gradually reduced from $56,400 in 1921 to $38,250 in 1926. From a monetary standpoint it is evident that the corporation plaintiff will not accumulate a surplus or undivided profits, and is absolutely precluded from offering capital stock to other than homeseekers. In fact, the findings show that the corporate entity is nothing more than an adopted means to accomplish a co-operative purpose, which enables prospective purchasers to acquire a home by the payment of stated installments

upon the purchase price, rather than monthly rent for an apartment. It would seem to be without question the very character of a domestic corporation intended as exempt under the statute, in virtue of the law's provision taxing only domestic corporations "carrying on or doing business."

The statute involved has been many times before the courts. Without doubt each case is determinable from its own peculiar facts. In Edwards v. Chile Copper Co., 270 U. S. 452, 46 S. Ct. 345, 70 L. Ed. 678, and Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, the Supreme Court construed the applicable provisions of the Revenue Act. The tax as therein held is an excise tax placed upon the privilege of incorporating. The language of the law indicates clearly the class to be subjected to the tax, and the question as to what is and what is not "carrying on or doing business" must be resolved from what the corporation actually does in the ordinary acceptation of those terms.

It is true, as the defendant insists, that the means adopted by the stockholders of the plaintiff corporation results in advantages to them. It does enable them to acquire by a gradual outlay an apartment; it serves to minimize expense in management, and probably results in the end in the purchase of a greater amount of space than it would otherwise cost them. However, may it be said that economical results co-operatively obtained, not by earnings but by savings, constitute business activities in the sense of the statute? In this case the single activity of the plaintiff is not to profit as an entity; the possibility of so doing is foreclosed to it. The entire conception of the organization is economical management, restricted to the single purpose of eventually owning the building, free from liens so that the stockholders may own their own apartments free from rent and the possibility of eviction. The case of the Edgar Estates Corporation v. United States, 65 Ct. Cl. 415, is not precisely in point. In that case the corporate activities were distinctly for a monetary profit to be accomplished by the judicious administration of various kinds of property, some of which exacted wise judgment as to investment and others to be made available for immediate sale, under circumstances when the same could not be accomplished by the individual owners as tenants in common. In the end, profits in the Edgar Estates Corporation were to accrue, i. e., money profits, to the stockholders. In this case the object of incorporation is not similar. On the contrary, the essence of the purpose is to avoid the earning of profits in a monetary sense and by an adopted method utilize the partial payments in the liquidation of incurred indebtedness, so that in the end the various stockholders may eventually own the building and their individual apartments. No part of the money exacted from the sixteen individuals interested goes to enrich cotenants. Each stockholder pays the full purchase price for his apartment, and the incentive for incorporation is to own a place to live, not to acquire income from a going concern organized on the basis of earning dividends for distribution to its stockholders.

We think the plaintiff is entitled to recover. Judgment for plaintiff for $450, with interest. It is so ordered.