## AUTOMATIC FIRE ALARM CO. OF DELAWARE v. BOWERS.

District Court, S. D. New York.

April 2, 1931.

Olney & Comstock, of New York City, for plaintiff.

Charles H. Tuttle, U. S. Atty., of New York City, for defendant.

CAFFEY, District Judge.

A brief description of the plaintiff and its activities between July 1, 1924, and June 30, 1926, is as follows:

It is a holding company. It was organized as such in 1920 for the purpose of taking over and managing securities held by an operating company. On receipt of the securities, including shares in National Protection Company, its own stock was distributed ratably to the stockholders of the operating company. As later explained, it has since sold the National Protection stock. In addition to the balance of the securities, it owns all the stock of the operating company, as well as all the stock of a building company, and nothing else. As put by one of the witnesses, quite accurately I believe, it could do its business in its hat.

The operating company conducts a wire system, much of it under ground, extending from the Bronx to the Battery. It had been a tenant in a building at 416 Broadway for many years. Throughout that period it had centered its equipment for carrying on its business at the building. It would have been both costly and wasteful to remove the headquarters elsewhere, as would have been necessary upon termination of the lease.

In the interest of the operating company, as far back as several years preceding 1924, it was deemed advisable to acquire the build-

ing (416 Broadway). In order to avoid having to pay an excessive price, negotiations for purchase of the building were conducted through an agent, subsidiary of a title company. These resulted in a purchase contract, entered into in the name of the agent. The purchase price was $325,000. Of this a down payment of $20,000 and a payment of $160,000 on closing title were required.

The operating company did not have the needed funds nor did it have collateral with which to get so large a bank loan. Accordingly, the plaintiff, having in hand the securities which had passed to it in 1920 from the operating company, pledged them and obtained from a bank the loan of $180,000 to finance the purchase. Either for tax reasons or because of some doubt as to the charter power of the operating company to own real estate, it was decided to have a building company take title to the property. Plaintiff caused the building company to be organized, advanced $2,000 for the purpose, and received its entire issue of stock in that amount.

Plaintiff had no need for the building and did not invest in it. It was acquired solely for the operating company, which wanted it as a permanent central station of its wire system. The name of the plaintiff was employed in effecting the purchase merely as a matter of convenience.

The purchase contract was signed and the building company was organized in November, 1924. The agent, in whose name the purchase was made, transferred the contract to plaintiff in December, 1924, and plaintiff assigned the contract to the building company in January, 1925, when the title was closed.

On receipt in May, 1926, of a part of the proceeds of the sale of the National Protection stock, hereafter mentioned, plaintiff devoted $115,000 toward repayment to the bank of the $180,000 loan.

The building company is still indebted to plaintiff for the $180,000. Plaintiff got nothing out of or on account of the transaction, except that the building company has paid it precisely the amount of interest which it has paid to the bank for the loan. Plaintiff has derived no profit whatever.

Plaintiff held 11,766 shares of National Protection Company stock. These or their predecessors had been acquired by the operating company in 1910. Toward the end of 1925 they were sold by plaintiff for $25 a share, or a total of $294,150, or at a profit, as adjusted with the Treasury Department for income tax purposes, of $5 a share.

Plaintiff did not desire to make the sale. It was made solely upon the insistence of the government, which contended that retention of the stock by plaintiff would be in violation of the Sherman Act (15 USCA §§ 1–7, 15). Plaintiff experienced difficulty in finding a buyer, and regarded the price accepted as below the real value.

Of the proceeds of sale collected prior to June 30, 1926, plaintiff used $115,000, as previously stated, in reducing the $180,000 bank loan and the balance in paying dividends.

Because of being a borrower from the bank, plaintiff was not allowed interest on deposits in its own name. In consequence, and solely for the purpose of getting interest, during 1924–1926 it placed deposits with the bank in the name of the operating company, which drew bank interest thereon and turned it over to plaintiff.

Occasionally during the same period plaintiff borrowed small sums temporarily from its subsidiaries, for which it paid no interest and which it used in paying dividends. Occasionally also plaintiff made small temporary loans to its subsidiaries. This, however, was for convenience merely; no interest was charged or paid.

Plaintiff paid no salaries to its officers, had no pay roll for employees, and paid no rent. Its directors received $10 per meeting. Apart from what has been recited, the sole activities of plaintiff were to collect its income and distribute it by way of dividends, with such incidental things as were essential to accomplishing those objects. It did nothing with respect to the management or policies of the operating company or the building company.

On these facts can it be said that plaintiff carried on or did or was engaged in business, within the meaning of section 700 of the Revenue Act of 1924 (26 USCA § 223 note)?

Plaintiff did less and was in position to do less than the corporations held subject to taxation in Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Von Baumbach v. Sargent Land Co., 242 U. S. 503, 516, 517, 37 S. Ct. 201, 61 L. Ed. 460; Edwards v. Chile Copper Co., 270 U. S. 452, 455, 46 S. Ct. 345, 70 L. Ed. 678; and International Salt Co. v. Phillips, 3 F.(2d) 678, 681 (D. C. Pa.), reversed in International Salt Co. v. Phillips, 9 F.(2d) 389 (C. C. A. 3), and sustained in

Phillips v. International Salt Co., 274 U. S. 718, 47 S. Ct. 589, 71 L. Ed. 1323. On the other hand, it did more and perhaps was in position to do more than any of the corporations held not taxable in Zonne v. Minneapolis Syndicate, 220 U. S. 187, 190, 191, 31 S. Ct. 361, 55 L. Ed. 428; McCoach v. Minehill & S. H. R. Co., 228 U. S. 295, 303–307, 33 S. Ct. 419, 57 L. Ed. 842; and United States v. Emery, Bird, Thayer R. Co., 237 U. S. 28, 32, 33, 35 S. Ct. 499, 59 L. Ed. 825. Yet none of these cases furnishes a substantial parallel or prescribes an exact test.

If each activity of plaintiff were separately considered, then, within the Supreme Court decisions, it is manifest that no one, taken singly, would constitute carrying on or engaging in business.

 A corporation is not taxable which confines its activities to those of a holding company and the mere accompaniments of functioning as a holding company [Eaton v. Phoenix Securities Co. (C. C. A.) 22 F.(2d) 497; Del Norte Co. v. Wilkinson (D. C.) 28 F.(2d) 876; Clallam Lumber Co. v. United States (D. C.) 34 F.(2d) 944; Stafford Owners v. United States (Ct. Cl.) 39 F.(2d) 743]; nor if, in addition, it make a few accommodation loans to its subsidiaries or affiliates from which it derives no profit [Rose v. Nunnally Inv. Co. (C. C. A.) 22 F.(2d) 102]; nor if it only sell stock held by it and distribute or reinvest the proceeds [Id.; United States v. Hotchkiss Redwood Co. (C. C. A.) 25 F.(2d) 958]; nor if it merely sell a portion of its stock either under legal compulsion or to escape legal proceedings [United States v. Hotchkiss Redwood Co., supra].

It is difficult to find a precise precedent. It is difficult also to frame an invariably applicable principle in a few words or in a succinct sentence. While the plaintiff seems to me intermediate between the two classes of corporations already explicitly passed on by the Supreme Court, yet the determination of whether it was carrying on or doing or engaged in business turns on an examination of its "activities and situation * * * as a whole." Edwards v. Chile Copper Co., 270 U. S. 452, 455, 456, 46 S. Ct. 345, 346, 70 L. Ed. 678.

 Considering its activities and situation, as an entirety, I feel that plaintiff was not, in the sense of the statute, operating for profit (Stone Tracy Case, page 171 of 220 U. S., 31 S. Ct. 342) or in pursuit of profit (Von Baumbach Case, page 516 of 242 U. S., 37 S. Ct. 201). On the contrary, not alone did plaintiff not make a profit in fact, but it studiously avoided making one. At most it permitted itself, to a limited extent, to be used by or on behalf of its subsidiaries and exclusively for their benefit or convenience. In so far as it was injected into the affairs of the operating company, in essence it was a conduit only.

The decision which is hardest to apply is the International Salt Case, partly because the Supreme Court rendered no opinion, and we must resort to the reports below [(D. C.) 3 F.(2d) 678; (C. C. A.) 9 F.(2d) 389] for the facts. Examination of the facts as summarized by the lower courts discloses, as it seems to me, that they were so widely divergent from the facts of the case at bar that the decision is distinguishable, particularly because the corporation there involved was plainly designed, through conduct of its own affairs, to reap gain for itself. It was the dominant head; it constantly controlled and directed the carrying on of business, using subsidiaries only as its instrumentalities. At least the facts are open to that interpretation. This is not true here.

Defendant argues that the present case comes within Argonaut Consol. Min. Co. v. Anderson (D. C.) 42 F.(2d) 219, which Judge Patterson said was "on the border"; but that case impresses me as different. There the corporation, primarily a holding company, had built up a considerable surplus. This was employed in stock market trading and in making call loans, obviously independent activities, which were unrelated to the usual type of holding company and whose sole purpose was gain.

Defendant also says that sale of the National Protection stock brought a profit to plaintiff. Even if so, the sale was not made for profit or in the course of business. Plaintiff was reluctant to part with the stock, and disposed of it solely because desired, perhaps demanded, by the government. Such conduct cannot be appropriately characterized as business for gain. Thus, in United States v. Hotchkiss Redwood Co. (C. C. A.) 25 F. (2d) 958, under somewhat corresponding conditions, a corporation constructed a road through its lands in order to avoid condemnation proceedings, and this was held not to be doing business.

At the trial I felt, and after reflection I continue to feel, that plaintiff did not, in the statutory sense, carry on or do or engage in business during the fiscal years 1924–1926.

Defendant's objection to Exhibit 2 for

identification is sustained, with exception to plaintiff.

Defendant's motion for direction of a verdict denied, with exception to defendant.

Verdict directed for plaintiff for $1,683, and interest thereon from July 25, 1928, with exception to defendant.