## PEABODY CO. v. UNITED STATES.
### No. 4429.

District Court, W. D. Tennessee.
May 21, 1937.

Armstrong, McCadden, Allen, Braden & Goodman and John B. Snowden, II, all of Memphis, Tenn., for petitioner.

Frank J. Ready, Jr., of Washington, D. C., and Wm. McClanahan, U. S. Atty., of Memphis, Tenn., for the United States.

MARTIN, District Judge.

On January 8, 1937, Peabody Company, incorporated under the laws of Tennessee, filed its petition against the United States of America for refund of the capital stock tax collected from the corporation, pursuant to section 701 of the Revenue Act of 1934 (26 U.S.C.A. § 1358 and note), in the amount of $980.32 and interest thereon.

On February 16th, the respondent answered, denying the right of the petitioner to the refund claimed. The case has been tried on stipulation of facts, supplemented by the testimony of Mr. J. Bayard Snowden, president of the petitioning company.

The general purposes of organization stated in the corporate charter granted petitioner by the state of Tennessee on June 26, 1916, were "purchasing, owning, improving, using, occupying, renting, leasing, enjoying and conveying real estate not exceeding in amount and size a lot and parcel of ground 400 feet square."

The record shows that the corporation was organized to effectuate the continuing common ownership of a valuable piece of downtown real estate in the heart of the city of Memphis, Tenn. This property, inherited by the two sons and three daughters of Mrs. Annie Brinkley Snowden, was incapable of division in kind and was regarded as adapted to permanent holding, in common, in the respective interests of the members of the Snowden family. The sole purpose of the organization of this holding company was to constitute a family holding company, owning, exclusively, one piece of real estate. There is no proof whatever to indicate that there was any purpose to use the holding company device as a means of buying, selling, or dealing in real estate, stocks, bonds, or securities.

No line of proof would point to any act, since the organization of the company, indicative of an ulterior purpose to avoid any lawful taxation. The company has paid all appropriate excise, annual franchise, and other taxes imposed by the state of Tennessee. The United States government has received payment of all income taxes due.

The single question is whether the petitioner is liable for the capital stock tax provided in section 701 of the Revenue Act of 1934, subdivision (a), 26 U.S.C.A. § 1358 (a) and note, which provides: "For each year ending June 30, beginning with the year ending June 30, 1934, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

It is provided (c) that the taxes imposed by virtue of this section shall not apply "(3) To any domestic corporation in respect of the year ending June 30, 1934, if it did not carry on or do business during a part of the period from the date of the enactment of this Act [May 10, 1934] to June 30, 1934, both dates inclusive."

Was the petitioner "doing business" during the taxable year in question within the meaning of the statute? The answer to this question determines this justiciable controversy. The government contends that several transactions by the petitioner constitute "doing business" within the meaning of the act. These transactions will be considered.

In 1930, the petitioner purchased $30,000 par value of Mississippi Joint Stock Land Bank bonds at 91; and, in 1932, purchased another 20 of the same bonds at 47. In 1935, petitioner sold, at 98, all 50 of the bonds thus purchased, making a substantial profit thereon. In 1932, the petitioner bought 30 bonds of par value $1,000 each of the state of Tennessee at 102.4828, and sold these state bonds in 1935 at 119.375, making another substantial profit. Following the sale of the state of Tennessee bonds and the Mississippi Joint Stock Land Bank bonds in March of 1935, the petitioner, on April 2, 1935, purchased certificates of deposit in an amount approximating the proceeds of the sale of the bonds, and renewed the certificates of deposit on July 2, 1935. It is claimed that these bond transactions constitute the doing of business, especially in view of the fact that a profit was realized by the holding company.

The testimony of Mr. Snowden shows that the accumulation of a surplus from the

rental income of the real property owned by the holding company (a department store building leased by petitioner to Lowenstein's) was due to the desire of the directors of the petitioner to be prepared to meet any contingencies which might result from the failure of the lessee to perform the covenants of the lease which included, among other things, the payment by the lessee of all property taxes. The investment in bonds of the undistributed surplus rents was regarded merely as better business than leaving the funds on deposit in a bank. It is obvious from the frank testimony of Mr. Snowden that it would be unreasonable to construe the accumulation of a surplus by the Peabody Company as motivated by any desire to deal in securities for profit. The policy of the company, in this respect, was manifestly designed to protect the owners of the stock in the holding company from possible disaster, should the lessee fail to perform its covenants under the lease.

Government counsel stress the large percentage of increase in the surplus of the holding company from the time it was organized to the year in which the capital stock tax is claimed by the government to have been properly assessed. The argument is answered in the direct and credible testimony of Mr. J. Bayard Snowden to the effect that the investment of undistributed rents was merely an accumulation of surplus for the protection of the property owned by the holding company.

■ The government contends that doing business, within the meaning of the Revenue Act, is evidenced by the payment by petitioner of the city taxes on its real estate in advance of maturity at a discount of 1½ per cent.

A reasonable interpretation of the statute impels the conclusion that it was entirely legitimate for the corporation to increase its rents in such manner, without subjecting itself to the penalty of the tax for doing business. The city of Memphis, in its need of funds, was urging its taxpayers to take the benefit of the discount; the lessee was well satisfied to have the lessor make the advance payments, and the resulting profit; and, in the opinion of this court, the action of the lessor holding company in this respect did not enlarge its activity to such extent as to constitute "doing business."

In support of its position, the government has cited Harmar Coal Co. v. Heiner, 34 F.(2d) 725 (C.C.A.3). An examination of the facts of the case will show that it is broadly distinguishable from the case at bar. The Circuit Court of Appeals for the Third Circuit, moreover, recognized the principle that, where a corporation merely receives and distributes avails of the leases of its property, it is not "doing business," within the meaning of the Revenue Act of 1918.

Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 204, 61 L.Ed. 460, is cited by the government for the definition that "doing business" means, as was stated in Flint v. Stone Tracy Company, 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, Ann.Cas.1912B, 1312, quoting Bouvier's Law Dictionary, vol. 1, p. 273, "that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." The contention of the government is not sustained by the decision, for the reason that the activities of the corporations taxed "included something more than the mere holding of property and the distribution of the receipts thereof," and embraced mining operations and numerous sales of quantities of real estate.

Government counsel cite the action of the Supreme Court in Phillips, Collector, v. International Salt Company, 274 U.S. 718, 47 S.Ct. 589, 71 L.Ed. 1323, in reversing the Court of Appeals for the Third Circuit in holding that a holding company receiving and distributing dividends, indorsing notes of the company whose stock it held, and purchasing bonds for retirement or sinking fund purposes, was not carrying on or doing business within the Revenue Act of 1918, so as to create liability for an excise tax on its capital stock. The decision of the Supreme Court was delivered Per Curiam and stated that the Court of Appeals was reversed on the authority of Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678. An examination of the last-mentioned case shows much activity on the part of the holding company there involved, with respect to the affairs of an operating company. The facts revealed do not remotely parallel the situation confronted in the case at bar, where we find merely that a holding company has been organized to enable a family to retain common ownership of a single piece of real estate rather than to sell it for division of the proceeds.

The marked difference is manifest from the language of Mr. Justice Holmes: "Looking at them as a whole we see that the plaintiff was a good deal more than a mere conduit for the Chile Exploration Company. It was its brain or at least the efferent nerve without which that company could not move. The plaintiff owned and by indirection governed it, and was its continuing support, by advances from time to time in the plaintiff's discretion. There was some suggestion that there was only one business and therefore ought to be only one tax. But if the one business could not be carried on without two corporations taking part in it, each must pay, by the plain words of the Act." Edwards v. Chile Copper Co., 270 U.S. 452, 456, 46 S.Ct. 345, 346, 70 L.Ed. 678.

The government has failed to produce any authority supporting its position. The facts in all cited cases in which taxes were upheld are obviously distinguishable from the facts of the case at bar. The decision whether a corporation is carrying on business within the meaning of the Corporation Tax Law must depend in each instance upon the particular facts before the court. Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460.

The petitioner has cited decisions which seem closely in point. Rose, Collector, v. Nunnally Investment Company, 22 F. (2d) 102 (C.C.A.5), in an opinion by Judge Bryan, held that a corporation, not engaged in any active business but with its capital largely invested in stable stocks and bonds and its stock all owned by four members of the same family, was not "doing business" which subjected it to capital stock tax under Revenue Acts, because of loans to its stockholders or of a few loans of small amounts to others, not made for profit thereon.

It will be observed that the Circuit Court of Appeals for the Fifth Circuit, in reviewing the authorities, including Edwards v. Chile Copper Co., supra, and Von Baumbach v. Sargent Land Co., supra, said: "Upon the authority of these cases it may safely be stated that the tax is based, not upon the charter powers of the corporation, but upon its activities, and that a corporation which merely receives the income earned by assets which it owns, and distributes that income among stockholders, is not engaged in business." 22 F.(2d) 102, at page 103.

And further (pages 103, 104 of 22 F. (2d): "The sale of stock to J. H. Nunnally was made merely for his accommodation, and not for the purpose of making a profit, or disposing of the stock. There was nothing in the handling of the stock or bonds which constituted the doing of business. The capital invested and reinvested, and not the activities of plaintiff, earned the profits. In maintaining its old investments, and in making new investments, plaintiff was only enjoying the fruits of its ownership, and neither these old or new investments were used to further business opportunity or standing, but solely for the purpose of producing income."

Likewise, the Ninth Circuit Court of Appeals, in United States v. Hotchkiss Redwood Co., 25 F.(2d) 958, 959, held that a corporation organized for the sole purpose of owning and holding a tract of timber land and reselling the same as a whole at a profit, whose activities were limited to maintaining its corporate existence, issuing bonds to take up a prior issue, paying its president and secretary nominal salaries, levying assessments on its stockholders to pay interest and taxes; which employed no agents to negotiate for a sale, and made no sale, except of right of way for a public road to avoid condemnation proceedings, was not carrying on or "doing business" which subjected it to capital stock tax under Revenue Acts of 1918 and 1921. The court, in a well-reasoned opinion in which the decisions of other United States courts were cited, said: "Of course, we must judge the activities of the corporation as a whole; but, if it was not carrying on or doing business because of the activities mentioned, it has done nothing else, and was not subject to the tax, unless, as contended by the government, every corporation organized for the purpose of holding property for gain or profit is doing business, regardless of its other activities."

See, also, Automatic Fire Alarm Co. of Delaware v. Bowers, 51 F.(2d) 118 (D. C.N.Y.S.D.); Eaton, Collector, v. Phoenix Securities Co., 22 F.(2d) 497 (C.C.A.2); Clallam Lumber Co. v. U. S. (D.C.) 34 F. (2d) 944, 945.

In the last-cited case, Judge Raymond goes to the nub of the question in asking, "What is the essential purpose for which plaintiff is maintaining its organization?"

The answer to that question on the record in this case is that the purpose of

organizing the holding company was to enable the Snowden family, for perhaps generations to come, to own a valuable piece of property in the city of Memphis, after improving it and placing it under lease to a lessee probably able to carry out the terms of the lease, but not necessarily able to do so. The company prudently withholds from distribution to stockholders portions of the income, to meet exigencies which may arise in connection with the ownership of the property.

Of the total authorized and outstanding issue of 250 shares of stock of the holding company, all shares are held in trust except 16⅔ shares. This evidences the stability of the original intent.

The transactions which the government contends constitute doing business are deemed merely incidental to the limited purpose in the organization of the holding company. The fact that immediate distributions of the rents collected have not been made, and that the rents have been permitted to accumulate, would not constitute the "doing of business." Why, then, should the investment of these accumulated rents, held for the protection of the property, constitute the doing of business so as to render the company liable for a capital stock tax? This court finds no logical answer, and no authority to support the position of the government.

Accordingly, judgment is awarded petitioner in the amount claimed.