**ABBOT et al. v. BRALOVE et al.**

**Civ. A. No. 3926-48.**

United States District Court
District of Columbia.

Dec. 9, 1948.

Spencer Gordon, of Washington, D. C., for plaintiffs.

John J. Carmody, of Washington, D. C., for defendants Bralove and Ernst.

Leo A. Rover, of Washington, D. C., for remaining defendants.

TAMM, District Judge.

Plaintiffs in this action are more than thirty tenants in the Broadmoor Apartments whose leases have expired and who are admittedly tenants by sufferance. The defendants are the former owners of the Broadmoor Apartments; the Cooperative Corporation which has purchased the apartment property from the previous owners; the realtor involved in the transaction and the additional defendants are some fifty purchasers of apartments in the Broadmoor building under the provisions of the new cooperative organization.

The plaintiffs contend that the sale of the Broadmoor Apartments to the Cooperative Corporation was made for the purposes of evading the provisions of the District of Columbia Emergency Rent Act, D.C. Code 1940, Tit. 45, § 1601 et seq., and that the present purchasers of apartments from the Cooperative Corporation are not entitled, under the provisions of the Rent Act, to possession of the apartments purchased by these defendants.

The plaintiffs bring this action in the form of a complaint for a declaratory judgment, praying that the Court declare that plaintiffs' right to continue in possession of the apartments occupied by them cannot, be-

cause of the provisions of the Rent Act, be affected by the sale of the property by defendants Bralove and Ernst, former owners, to the defendant Broadmoor Cooperative Apartments, Inc., or by the possession by the "perpetual use and equity contracts" obtained by those defendants who are purchasers of individual apartments. The defendants, in contesting the issues, move the Court for dismissal of the complaint upon several grounds, challenging the applicability of the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202, to the facts in this case, alleging that the action is prematurely filed, and that adequate remedy is available in the Municipal Court. In addition, plaintiff L..D. Gasser, occupant of an apartment in the Broadmoor Apartments since 1941 and presently occupying his apartment under an expired lease, moves for summary judgment against various defendants including Robert J. McBride, who is the purchaser of the apartment presently occupied by plaintiff Gasser. The motion for summary judgment by plaintiff Gasser brings the case forward to test the legal question involved. Upon oral argument of the case, counsel stipulated that the hearing would be for the purpose of submitting the facts of the case to the Court for adjudication on the merits, upon the facts established by the pleadings and the resulting legal conclusions which the Court would draw therefrom.

The rights of the litigants must be determined within the provisions of the D.C.Rent Act referred to above, the pertinent sections of which are as follows:

"45—1605. (a) It shall be unlawful, regardless of any agreement, lease, or other obligation heretofore or hereafter entered into, for any person to demand or receive any rent in excess of the maximum-rent ceiling, or refuse to supply any service required by the minimum-service standard, or otherwise to do or omit to do any act in violation of any provision of this chapter or of any regulation, order, or other requirements thereunder, or to offer or agree to do any of the foregoing. Nothing herein shall be construed to require the refund of any rent paid or payable for the use or occupancy of housing accommodations prior to the 30th day following the enactment of this chapter.

"(b) No action or proceeding to recover possession of housing accommodations shall be maintainable by any landlord against any tenant, notwithstanding that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled, unless—

\* \* \* \* \* \*

"(2) The landlord seeks in good faith to recover possession of the property for his immediate and personal use and occupancy as a dwelling, or

"(3) *The landlord has in good faith contracted in writing to sell the property for immediate and personal use and occupancy as a dwelling by the purchaser and that the contract of sale contains a representation by the purchaser that the property is being purchased by him for such immediate and personal use and occupancy.*" (Emphasis supplied.)

"45—1611. As used in this chapter—

"(a) The term 'housing accommodations' means any building, structure or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes in the District of Columbia (including, but without limitation, houses, apartments, hotels, rooming- or boarding-house accommodations, and other properties used for living or dwelling purposes) together with all services supplied in connection with the use or occupancy of such property.

\* \* \* \* \* \*

"(c) The term 'rent' means the consideration, including any bonus, benefit, or gratuity, demanded or received per day, week, month, year, or other period of time as the case may be, for the use or occupancy of housing accommodations or the transfer of a lease for such accommodations.

\* \* \* \* \* \*

"(f) The term 'tenant' includes a subtenant, lessee, sublessee, or other person entitled to the use or occupancy of any housing accommodations.

"(g) *The term 'landlord' includes an owner, lessor, sublessor, or other person entitled to receive rent for the use or occupancy of any housing accommodations.*" (Emphasis supplied.)

The plaintiffs' position is that under the provisions of the Act just quoted, the purchasers of the apartments under the cooperative program in the Broadmoor Apartments, are not landlords within the definition of the Act, but that the said purchasers of such apartments are tenants and that as tenants they have no right to occupancy of an apartment superseding that of the prior tenants, i. e., the present plaintiffs.

While counsel on both sides have cited several cases outside of the District of Columbia relating to cooperative apartments and the rights, if any, of the purchasers thereof, under the provisions of Rent Control Acts, the rights and responsibilities of the present occupants as well as of the purchasers must be determined by the individual facts in the current case.

The prior owners of the Broadmoor Apartments, defendants Bralove and Ernst, on August 19, 1948, executed an option-agreement for the sale of the Broadmoor Apartment property to the Broadmoor Cooperative Apartments, Inc., which option was exercised and the sale was consummated on October 30, 1948. Under the terms of the sale, Bralove and Ernst sold the property to the Broadmoor Cooperative Apartments, Inc. for $2,375,000, of which the Cooperative Apartment, Inc., assumed the principal balance of the existing deed of trust in the amount of some $1,500,000, the Cooperative paying Bralove and Ernst $650,000 in cash, and the balance in debenture notes. The terms of sale contained a provision for the assignment to the vendors of unsold use and equity contracts for unsold apartments as additional security for the debenture notes,—counsel having advised the Court on oral argument that all apartments have been sold, this latter provision does not appear pertinent to consideration of the case.

The first trust was placed upon the property under date of December 1, 1947 in the amount of $1,500,000, with interest at four percent. The first trust is held by an insurance company and represents, in amount, 62 percent of the purchase price of the apartment property. The first trust is payable as to principal and interest, in quarterly instalments of $29,062.50. The trust, consequently, is retirable as to principal and interest over a period of approximately 21 years.

The defendant Broadmoor Cooperative Apartments, Inc., is a Delaware Corporation, organized for the purpose of acquiring and maintaining a "single housing project on a non-profit basis for the housing of its members" as stated in its charter. The Certificate of Incorporation provides that it is organized without capital stock [1] and that membership in the incorporation and the transfer thereof shall be upon such terms and conditions as shall be provided by the By-Laws. The management of the affairs of the corporation are conducted by its Board of Directors in accord with the requirements of its By-Laws and the Board of Directors is elected at an annual meeting of the members of the corporation.

The By-Laws of the Broadmoor Cooperative Apartments, Inc., provide that the members of the corporation shall meet annually to elect a Board of Directors; that the vote of the majority of the members present at the annual meeting shall decide any question before such meeting; and, grants enumerated powers to the Directors. The Board of Directors according to the By-Laws [2] shall consist of not less than three nor more than five directors selected by the members of the corporation. The property and business of the corporation shall be managed by its Board of Directors [3] who may exercise all such powers of the corporation and "do all such lawful acts and things as are not by statute and the Certificate of Incorporation or by the By-Laws, directed or required to be exercised or done by the members." The By-Laws provide for meetings of the Board of Directors, for the election of officers, set forth the powers of the several officers and require an annual statement of the Board of Directors. The By-Laws of the corporation [4] provide that *membership in the corporation shall be limited to owners of outstanding and subsisting "perpetual use and equity contracts" issued by the corporation*

---

[1] Para. 4 of Cert. of Incorp.
[2] Para. 14 of the By-Laws.
[3] Para. 17 of the By-Laws.
[4] Para. 45 of the By-Laws.

*and thereinafter referred to as "use-contracts"*. (Emphasis supplied). The By-Laws establish two types of membership, namely, "resident" and "equity". Resident members are described [5] as any "natural person owning an outstanding and subsisting use-contract issued by the corporation and under which the owner is currently entitled to occupancy rights." Resident members have full voting rights. Equity members are described [6] as persons, firms or corporations acquiring an outstanding and subsisting use-contract without "transferee occupancy rights" having been approved by the Board of Directors. Equity membership in the corporation carries with it the right to vote with resident members as a single class on matters pertaining to the Certificate of Incorporation, the sale or mortgage of the corporate property, or the dissolution of the corporation. No other voting rights are accorded equity members. Membership in the corporation may be transferred "only as an incident to the transfer of a use-contract". An equity member, being a natural person may become a resident member and vice versa.

The By-Laws [7] provide that the first Board of Directors shall allocate the first acquisition cost of the housing project to the individual apartments and that the amount so assigned shall be deemed that apartment's "assigned capital cost and shall not thereafter be subject to change". These By-Laws require that each use-contract shall contain a statement of the assigned capital cost of the apartment and a statement of the amount of mortgage indebtedness allocated to said apartment. The By-Laws provide that the difference between the assigned capital cost and the allocated mortgage indebtedness shall be deemed "the equity costs of each apartment" and that each initially issued use-contract shall be purchased from the corporation at not less than its assigned capital cost with payment therefor equal to the equity cost and "subject to the allocated mortgage indebtedness". The By-Laws [8] of the corporation provide for monthly assessments, which as-sessments shall be the sums "necessary and adequate for the continued ownership and operation of the project". The Board of Directors is empowered to determine the amounts required for capital items "Such as principal and interest payments on the mortgage and any outstanding debenture indebtedness" and for operating items such as taxes, insurance, repairs, betterments, operating expenses, etc. These assessments are payable monthly as ordered by the Board of Directors.

The By-Laws required that there shall be established and maintained a cash deposit account to be known as the "Capital Account" into which shall be deposited all proceeds from the sale of apartments, both interest and principal, "the capital portion of all monthly assessments", and rentals of apartments not covered by outstanding use-contracts. This section of the By-Laws provides that unless ordered by the Board of Directors "all disbursements from said Capital Account shall be limited to the payment of principal and interest on the mortgage indebtedness of the corporation and any debenture indebtedness created in the acquisition of the project".

The By-Laws further require the establishment of an account known as "Operating Account" into which there shall be deposited the operating portion of all monthly assessments and from which account disbursements shall be made for the general needs of the corporation, including taxes, insurance, repairs and other operating expenses.

Under the heading "Transfer of Perpetual and Equity Contracts" [9] it is set forth that the "primary object of this corporation is to operate and maintain its property on a mutual and cooperative basis for the housing needs of resident members". This By-Law sets forth that, coupled with the right of occupancy, valuable equity rights arise from the purchase of use-contracts and that "to the fullest degree these equity rights are deemed transferrable either absolutely or by way of pledge". It is set forth that the right of occupancy under the use-contract

---

[5] Para. 46 of the By-Laws.
[6] Para. 47 of the By-Laws.
[7] Para. 50 of the By-Laws.

[8] Para. 52 of the By-Laws.
[9] Para. 55 of the By-Laws.

is a matter of discretionary decision of the Board of Directors and that every transfer to resident membership, with its right of occupancy as defined in the use-contract, is subject to the approval of the Board of Directors. The approval of the Board of Directors is not required in case of a transfer of a use-contract except where the transferee desires the status of resident membership in the corporation.

It is provided [10] that the right of leasing or subleasing by resident or equity members is subject to the approval of the Board of Directors and that in the event an application to lease or sublease is denied, the corporation, at the election of the member, shall be required to make every reasonable effort to rent the apartment at a fair rental "for the account of the member and without charge for rent collection".

Provisions are made in the By-Laws for default under use-contracts by surrender of the apartment and for other collateral matters.

The By-Laws provide [11] that upon the sale of the housing project, all members having valid use-contracts then outstanding shall be entitled to share in the net proceeds of the sale and in other assets in the same proportion as the assigned capital cost of his use-contract bears to the total assigned capital cost of all outstanding and valid use-contracts and subject to other variables not essential to a consideration of the problem before the Court.

The By-Laws provide [12] that the property and facilities of the corporation, including but not limited to the garage, lobby and other community space, shall at all times be restricted in use to the housing and related needs of the lawful occupants of the apartments and their guests and that "under no circumstances shall community property be leased or operated for profit".

Under the provisions of the By-Laws of the corporation, the purchaser of an apartment and the Broadmoor Cooperative Apartments, Inc., shall execute a "perpetual use and equity contract" (Plaintiffs' Ex. 3). This contract by its terms provides that the cooperative sells to the member and the member purchases "the right of perpetual use and enjoyment of apartment No. —— * * * in the Broadmoor Apartments". The perpetual use and equity contract then sets forth that "for the purpose of determining the basis of proration of operating expenses, distribution to members in the event of sale of the entire corporate property or upon the dissolution of the cooperative, an "assigned capital cost has been fixed by the cooperative for the purchased apartment at $—— of which the allocated mortgage indebtedness is currently in the sum of $——, leaving a present balance of equity cost of $——. Paragraph 3 of the perpetual use and equity contract again sets forth the allocation of the purchase price as "equity cost" and "mortgage allocation". The purchaser agrees to pay the full equity cost within ten days of the settlement date of the contract and, in addition, the current month's assessments and a sum of 1 percent of the total purchase price which is a pro-rata assessment for initial working capital in the cooperative.

The purchaser of an apartment, in executing the perpetual use and equity contract agrees that the Board of Directors shall determine the sums necessary and adequate for the continued ownership and operation of the Broadmoor Apartments and that the Board of Directors shall "determine the amounts required for capital items such as principal and interest payments on any mortgage and/or debenture indebtedness and for operating items". The perpetual use and equity contract sets forth again that the monthly requirements are determined separately as to capital and operating items. The purchaser of the perpetual use and equity contracts [13] obtains the "use and enjoyment of all community property" and agrees that "the purchased apartment shall be used only as a private residence for the use of the member, his family, guests and servants". The purchaser further undertakes to keep the purchased apartment in good order and repair at his own cost and expense and that he will make no structural changes without prior approval of the cooperative. He undertakes not to make any lease or sublease of the apartment without

---

[10] Para. 56 of the By-Laws.
[11] Para. 60 of the By-Laws.
[12] Para. 63 of the By-Laws.
[13] Para. 6 of Contract.

the consent of the cooperative. Sale or transfer by the member of the purchased apartment ends the membership of the owner of the apartment in the corporation. The perpetual use and equity contract contains the same provisions relating to distribution of the assets of the corporation as therein set forth in the By-Laws cited above. The perpetual use and equity contract further provides that the member purchasing it represents to the cooperative that the apartment being purchased by him, under the terms of the contract, is for the immediate and personal use and occupancy of the member and his family and that the apartment is "presently occupied under an expired lease and is sold subject to an existing tenancy by sufferance". There is provision in the perpetual use and equity contracts for the recording of pledged use-contracts.

The question arising at this point in the recital of the facts is whether the purchaser of the perpetual use and equity contract acquires the rights of a landlord within the provisions of the District of Columbia Emergency Rent Act. As the Court recently said in the case of Tudor Arms Apartments v. Shaffer, Md., 62 A.2d 346, 348, not yet reported [in State reports]: "The substantial nature of those rights, rather than the form of the transaction must be considered." In addition to contending that the defendants are mere tenants, the plaintiffs further argue that the purchasers of perpetual use-contracts, if not tenants, are mere stockholders in a corporation and as such cannot assume occupancy of apartments purchased by them. The plaintiffs' contention in this regard is that the Broadmoor Cooperative Apartments, Inc., is the legal owner of the apartment and cannot exercise the landlord's right to recover possession of the property for "personal use and occupancy" and that since the corporation is actually the landlord, the stockholders have no right to exercise any derivative right of occupancy.

The first factor considered by the Court as necessary of comment in determining the status of the defendants, is the fact that their purchase of an apartment necessarily involves a substantial capital outlay. The amount necessary for the purchase of the use and equity contract has been determined by the Board of Directors upon a pro-rata basis which the individual apartment bears to the entire housing project. The exchange of a capital investment for a perpetual right of occupancy of a designated apartment is certainly an indicia of purchase and ownership. Closely related to the matter of the defendant's capital outlay for the purchase of an apartment is the allocation made of this capital outlay and of the entire purchase price of the apartment. It will be observed from the By-Laws set out above, as well as from the provisions of the use and equity contract, that a specific amount of the total purchase price of each apartment is specifically delegated to "mortgage allocation" and that the By-Laws necessitate the establishment of a "Capital Account" which shall be used solely for the purpose of paying principal and interest on the mortgage indebtedness of the corporation and the debenture indebtedness created in the acquisition of the project. Thus it follows that the purchaser of an apartment has specifically assigned to him and assumes a pro-rata share of the existing first trust upon the property. A designated portion of the members' monthly assessments goes into a fund from which the quarterly payments as to interest and principal upon the first trust are made. Over a period of years, when the first trust is retired, the amount of the purchaser's assessments will be diminished on a pro-rata basis, so that the individual apartment owner's obligation will then be solely for monthly assessments for the operation, maintenance and upkeep of the apartment property. This situation is analogous to that of the usual purchase of a dwelling under existing realty practices. The management and direction of the apartment house is vested, by the documents set forth heretofore, in a Board of Directors elected by the members of the corporation. The members of the corporation thus have the direct and only voice in the operation of the property. The holders of the perpetual use and equity contracts have the right to the sale or pledge of these contracts. In the event that an apartment owner desires to sell his apartment, the responsibility of finding a purchaser is not undertaken by the cooperative, but the owner is in the same status as any other property holder, who

must either find a purchaser himself or obtain the services of a broker to represent him. The purchaser of an apartment has full authority to make such changes in the decoration and arrangement of the individual apartment as he sees fit, subject only to the proviso against structural changes. Decorations and re-arrangements of individual apartments are done solely at the member-owner's expense, at his suggestion, and through decorators or contractors selected and paid by him.

Three-fourths of the members of the corporation are authorized by the Charter to sell, lease, exchange or mortgage the assets of the corporation under such terms and conditions as the Board of Directors believes is in the best interests of the corporation.

The Board of Directors, selected by the members, serves without any compensation.

In the light of the factors set forth above, the Court is of the opinion that the purchasers of cooperative apartments in the Broadmoor Apartments are in a much different status than tenants under a lease. In reaching this conclusion it is pointed out that the purchaser of an apartment obtains a perpetual right of occupancy in exchange for a capital investment, which cannot be considered a "bonus" under the Rent Act. Ultimately, upon the discharge of the present encumbrances upon the title resulting from the purchase of the property by the cooperative, the apartment owners will pay only maintenance and operation costs. These and other factors outlined above are most important indicia of ownership. The substantial result of these indicia must be considered in addition to the form of the transaction which, of necessity, places the bare legal title in the cooperative corporation. See Stafford Owners, Inc., v. United States, 39 F.2d 743, 69 Ct.Cl. 475.

■ The plaintiffs, in their briefs, refer to the fact that the National Rent Control Acts, 50 U.S.C.A.Appendix, § 1881 et seq., in two separate enactments, contained provisions that required a specified percentage of the present tenants to participate in any plans to change apartment houses to cooperative undertakings. The National Rent Act is, as stipulated by counsel, not applicable to the District of Columbia, and the fact that Congress, in the enactment of the D. C. Rent Act, ignored the provisions incorporated in the National Acts relating to cooperative apartments, must have intended to omit them from any special consideration or requirements in the District of Columbia.

■ The plaintiffs contend that the sale by the defendants Bralove and Ernst of the apartment building to the Broadmoor Cooperative Apartments, Inc., was a scheme to evade the provisions of the Rent Act and to enable those defendants to make a substantial profit. This Court must point out that the restrictions of the D. C. Rent Act do not restrict profits upon sales of property, but apply only to rentals and leases. Hicks v. Bigelow, D.C.Mun.App., 55 A.2d 924.

■ Relative to the question of good faith in the transaction, as raised by the plaintiffs, it is pointed out that there is no question raised as to the good faith of the purchasers of apartments under the cooperative plan to obtain and use the purchased apartments as dwellings. The provisions of the D. C. Rent Act raising the question of good faith relates to the intention of the landlord to take "immediate and personal use and occupancy" of the housing accommodation for his personal use. In purchasing the perpetual use and equity contracts the individual apartment purchasers' contracts provide that the purchase is for their personal use, and, as indicated, there is nothing before the Court to show lack of good faith on the part of any holder of a use-contract. The fact that the cooperative apartment plan may have the incidental effect of ousting present tenants-by-sufferance in possession, is not evidence of bad faith on the part of purchasers of individual apartments nor can such effect be, per se, construed as evidence of an intentional evasion of the Rent Act.

■ The plaintiffs contend that the defendant apartment purchasers, if not merely tenants under the Rent Act, then are, in the alternative, mere stockholders in a corporation and as such have no legal right to a specific item of the property of the corporation, i. e., an individual apartment. Upon this point attention is directed to the fact

that the indicia of ownership as set forth above completely negatives the idea that these purchasers of individual apartments are stockholders. The cooperative corporation, holding bare legal title, has no stockholders. The corporation is a non-profit one which further negatives the suggestion of stockholder status. The principal factor influencing the Court in this conclusion, however, is the fact that the defendant apartment purchasers assume a specifically allocated portion of the mortgage indebtedness upon the property, which obligation is discharged as to principal and interest by monthly payments similar in nearly all respects to contractual obligations which the defendant purchasers would make had they bought a housing accommodation in the form of a detached residence rather than an apartment in a cooperative venture. This situation clearly distinguishes the status of the apartment purchasers from that of stockholders.

Applying all of these factors to the provisions of the D. C. Emergency Rent Act, the Court concludes that the defendant purchasers of the cooperative apartments, because of their proprietary rights, their voice in the management of the building, their voice in any proposed sale or mortgage of the property, plus the exclusive right to personal perpetual occupancy of an apartment as a dwelling, and the other "indicia of ownership" set forth in this opinion, are landlords within the definition contained in the Act itself and are entitled, under the provisions of the Act, to the possession of the apartments purchased by them for their personal use and occupancy.

Several additional points require comment by the Court. While plaintiffs point out that the "rent" paid by the purchasers of apartments must include the 1 percent capital assessment for initial operating capital, an estimated percentage of the individual purchase price, depreciation, etc., it is noted that Plaintiffs' Exhibit 6, consisting of a comparative table of rentals charged former tenants and the monthly assessments charged the owner occupants for the same apartments, contains 44 comparative sets of figures. Of these, 21 are at an actual cost to the owner-occupants of less than the rental price to tenants under the non-cooperative owners. The remaining 13 costs are at a higher figure for the new occupants than for the former occupants. Again emphasis must be placed on the fact that the monthly payment contains a substantial allocated amount for trust principal and interest.

The facts in the present case may be readily distinguished from the case of Woods v. Burg, D.C., 82 F.Supp. 242, 243, cited by the plaintiffs, where the Court found in a case involving cooperative apartments that "some of the prospective purchasers were told that they were not entering into a binding contract for deed, but that they could default at any time they desired without any further obligation. In fact, some of them considered the transaction as one of rent rather than purchase".

The current case is likewise distinguished from Soule v. McCluskey, Municipal Court, City of Los Angeles, filed August 17, 1948 [not yet reported] and Woods v. Murray, D.C., 80 F.Supp. 4, in that these cases involved sales of undivided interests in an entire apartment.

This decision, going to the merits of the case, negatives the necessity for the Court's ruling upon the several motions of the defendants. The Court, upon the basis of the plaintiffs' complaint and prayer for declaratory judgment, finds for the defendants in this action.