ROSE, Collector of Internal Revenue, v. NUNNALLY INV. CO.

Circuit Court of Appeals, Fifth Circuit.
November 1, 1927.

No. 4944.

1. Internal revenue ⟨⟐⟩9(26)—Corporate capital stock tax is based on corporation's activities, and not charter powers (Revenue Acts 1918 and 1921, § 1000 [Comp. St. § 5980n]).

Capital stock tax, imposed on corporations by Revenue Acts 1918 and 1921, § 1000 (Comp. St. § 5980n), is based, not on charter powers of corporation, but on its activities.

2. Internal revenue ⟨⟐⟩9(26)—Corporation holding property and lending money to stockholders for their accommodation, not for profit, held not "doing business," subjecting it to capital stock tax (Revenue Acts 1918 and 1921, § 1000 [Comp. St. § 5980n]).

Corporation, not engaged in any active business, but with its capital largely invested in stable stocks and bonds, and its stock all owned by four members of the same family, held not "doing business," which subjected it to capital stock tax, under Revenue Acts 1918 and 1921, § 1000 (Comp. St. § 5980n), because of loans to its stockholders, or of few loans of small amounts to others, not made for profit thereon.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

In Error to the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Action by the Nunnally Investment Company against Josiah T. Rose, Collector of Internal Revenue for the District of Georgia. Judgment for plaintiff (14 F.[2d] 189), and defendant brings error. Affirmed.

C. P. Goree, Asst. U. S. Atty., of Atlanta, Ga. (Clint W. Hager, U. S. Atty., of Atlanta, Ga., on the brief), for plaintiff in error.

D. W. Rountree and Granger Hansell, both of Atlanta, Ga. (Anderson, Rountree & Crenshaw, of Atlanta, Ga., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is a suit by the Nunnally Investment Company to recover amounts assessed as capital stock taxes, and paid by it to the collector of internal revenue under protest. The amounts here involved were assessed for the two-year period beginning July 1, 1921, and ending June 30, 1923, under section 1000 of the Revenue Acts of 1918 and 1921 (Comp. St. § 5980n), both of which impose upon corporations a capital stock tax "with respect to carrying on or doing business," but exempt corporations which were "not engaged in business * * * during the preceding year ending June 30," etc. The District Judge, before whom by written stipulation the trial was had without a jury, held, upon the evidence submitted, that the plaintiff was not engaged in business within the meaning of the cited section, and entered judgment in its favor. Defendant assigns error, and contends that the evidence shows that plaintiff was so engaged in business.

The plaintiff company was incorporated, pursuant to the laws of Georgia, under the name of the Nunnally Company, and thereafter engaged in the manufacture and sale of candy until the year 1920, when it sold its business to a company of the same name, but which was incorporated under the laws of Delaware, and secured amendments to its own charter, changing its name to Nunnally Investment Company, and limiting its charter powers, but leaving it still authorized to own, buy, and sell stocks and bonds, evidences of indebtedness, and any other personal property. The proceeds of the sale to the Delaware Company constituted plaintiff's entire assets. A part of the consideration of that sale, which plaintiff received, was represented by about 40 per cent. of the outstanding capital stock of the purchasing company. It was the deliberate intention of plaintiff not to do anything during the period here involved that would subject it to liability for the capital stock tax. During that period it had but four stockholders, J. H. Nunnally, his wife, son, and daughter, who held its annual meetings of stockholders, and elected officers. Meetings of the board of directors were held semiannually, and declared semiannual dividends of $50,000. Salaries were paid only to the president and vice president. There were no regular employees. On July 1, 1921, at the beginning of the period for which the taxes in question were levied, the capital and surplus of the plaintiff company amounted to $2,493,748.43, and were wholly in personal property in the manner shown by the following statement:

| | |
|---|---:|
| Cash | $ 8,419.35 |
| Loans to stockholders | 963,100.00 |
| Loans to employees | 1,934.08 |
| Stocks | 645,765.97 |
| Industrial bonds | 342,525.41 |
| Municipal bonds | 434,758.50 |
| Foreign bonds | 97,245.12 |
| Total | $2,493,748.43 |

On June 30, 1923, at the end of the period in question, the assets were similarly invest-

ed or held, but had increased to $2,722,990.79, as appears from the following statement:

| | |
|---|---|
| Cash | $ 32,228.98 |
| Loans, to stockholders | 1,020,200.00 |
| Loans to employees | 5,839.15 |
| Stocks | 941,747.85 |
| Industrial bonds | 267,255.96 |
| Municipal bonds | 430,800.10 |
| Foreign bonds | 24,918.75 |
| Total | $2,722,990.79 |

It thus appears that the net increases were:

| | |
|---|---|
| Cash | $ 23,809.63 |
| Loans to stockholders | 57,100.00 |
| Loans to employees | 3,905.07 |
| Stocks and bonds | 144,427.66 |
| Total | $229,242.36 |

Loans to stockholders and employees were represented by notes. Dividends equal to net income were not paid to stockholders, because of the policy of paying semiannual dividends of $50,000, and also because it was thought advisable to maintain a reserve to pay, if required, large income tax claims that were in dispute.

The employees to whom loans were made were nine employees of the Delaware corporation who bought stock in it. Their notes bore interest at rates ranging from 6 per cent. to 8 per cent., and were secured by their stock. The object of these loans was, not to make a profit for plaintiff, but to enable such employees to acquire stock in that corporation, the controlling interest in which was at that time owned by plaintiff and its stockholders. Payments were received from time to time and other loans were made both to stockholders and to employees. The total amount of loans to stockholders was $65,400, and to employees, $7,511.65. Several loans amounting in all to $8,000 were made to the Bowden Springs Company, and $7,800 was repaid by it. That company was owned by J. H. Nunnally. Stock of the Nunnally Company of the par value of $4,400 was sold to J. H. Nunnally, but for his accommodation, at the market price, and at a loss. No other sales of stock were made; but stock in the Trust Company of Georgia was exchanged for stock of equal value issued by its successor. Bonds of the value of about $400,000 matured and were converted into cash, but no bonds were sold. The cash received, in excess of that on hand, advanced on loans, and paid out in dividends, was invested or reinvested in stable stocks and bonds.

The corporation tax of 1909 was imposed upon net income, whereas the tax under consideration is upon capital stock. But in each instance the tax was or is required to be paid by corporations engaged in business, and therefore the question whether liability exists is the same under either statute. What constitutes carrying on, or engaging in, or doing, business is a question that has several times been passed upon by the Supreme Court. It was held that business was being done by the corporations affected in the Corporation Tax Cases, 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, Edwards v. Chile Copper Co., 270 U. S. 452, 46 S. Ct. 345, 70 L. Ed. 678, and Phillips v. International Salt Co., 47 S. Ct. 589, 71 L. Ed. 1323. On the other hand, it was held that business was not being done in Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428, McCoach v. Minehill, etc., R. Co., 228 U. S. 295, 32 S. Ct. 842, 56 L. Ed. 1269, and United States v. Emery, etc., Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825.

[1, 2] Upon the authority of these cases it may safely be stated that the tax is based, not upon the charter powers of the corporation, but upon its activities, and that a corporation which merely receives the income earned by assets which it owns, and distributes that income among stockholders, is not engaged in business. In the Von Baumbach Case, supra, the earlier cases are reviewed, and the rule for determining whether or not a corporation is engaged in business is stated in the following language:

"It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active, and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

We are of opinion that a result of the application of the test there stated is to relieve plaintiff from liability. The case here presented appears to us to be governed by the decision in McCoach v. Minehill, etc., R. Co., supra. The increase in loans to stockholders was small, comparatively speaking, and was not greater than could have been paid to them as dividends derived from income. The sale of stock to J. H. Nunnally

was made merely for his accommodation, and not for the purpose of making a profit, or disposing of the stock. There was nothing in the handling of the stock or bonds which constituted the doing of business. The capital invested and reinvested, and not the activities of plaintiff, earned the profits. In maintaining its old investments, and in making new investments, plaintiff was only enjoying the fruits of its ownership, and neither these old or new investments were used to further business opportunity or standing, but solely for the purpose of producing income. If it can be held that plaintiff was engaged in business, it must in our opinion be because of loans made to employees of the Nunnally Company, which was controlled by plaintiff and its stockholders. If it had directly invested that part of its income which it lent to the employees of the Nunnally Company, it would have been but enjoying the fruits of its own property. Yet it took the stock as security, and would have owned it if the loans had not been paid off. In the final analysis it was investing in that stock. Besides, it was dealing, not with the public for profit to itself, but with a class whose increased interest might indirectly benefit the company in whose success it was largely concerned. The most that can be said is that there was an indirect benefit to plaintiff, in that its stock would become more valuable.

In the recent case of Edwards v. Chile Copper Co., supra, relied on by defendant, the active assistance of the holding company held liable was given to the subsidiary corporation. Without such assistance the business desired could not have been carried on. In Phillips v. International Salt Co., 47 S. Ct. 589, 71 L. Ed. 1323, decided May 2, 1927, on the authority of the Chile Copper Co. Case, the holding company that was held liable indorsed the notes for its subsidiary corporations, and actively lent its credit to them. In our opinion, these two latest decisions of the Supreme Court do not control the case at bar.

The judgment is affirmed.