## NICHOLAS v. COLORADO FUEL & IRON CORPORATION.

### No. 2034.

Circuit Court of Appeals, Tenth Circuit.

June 18, 1940.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and S. Dee Hanson, Sp. Assts. to Atty. Gen., and Thomas J. Morrissey, U. S. Atty. and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., on the brief), for appellant.

Fred Farrar, of Denver, Colo., for Appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented for consideration is whether the Colorado Fuel and Iron Corporation was carrying on business during 1935 within the meaning of the Revenue Act of 1935, Ch. 829, 49 Stat. 1014, as amended by the Revenue Act of 1936, Ch. 690, 49 Stat. 1648, so as to become liable for the payment of the excise taxes provided therein.

Section 105(a) of the Revenue Act of 1935, Ch. 829, 49 Stat. 1014, 26 U.S.C.A. Int.

Rev.Acts, page 796, provides: "(a) For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock."

Sec. 401, Ch. 690, 49 Stat. 1648, of the Act of 1936, 26 U.S.C.A.Int.Rev.Acts, page 798, amended the Act of 1935 by reducing the rate of payment of the tax from $1.40 per thousand to $1 per thousand.

The Colorado Fuel and Iron Company, a corporation, operated a large steel mill at Pueblo, Colorado, coke ovens, blast furnaces, and mined coal and iron ore. In 1933 an equity receiver was appointed to take charge of the affairs of the company. This receivership continued until August 1, 1934, when the company filed application for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The petitions were approved, a trustee was appointed, the former proceedings were stayed, and the affairs of the company were thereafter administered under this proceeding.

In due course of time a plan of reorganization was submitted to the court. The plan provided that a new corporation, the Colorado Fuel and Iron Corporation, herein called the taxpayer, was to be organized to take over the property of the old company. The plan was approved by the court April 25, 1936. On June 20, 1936, the court entered an order providing that on July 1, 1936, or such later dates thereafter as practical, the trustee should transfer all the property of the old company to the taxpayer; that the transfer should be effective as of midnight June 30, 1936; and that any operation of the business of the old company by the trustee after that date should be for the account and benefit of taxpayer as fully as if the transfer had been made at midnight June 30, 1936.

The purposes for which taxpayer was organized as set forth in the charter are: To acquire the business and assets of the old company; to acquire real and personal property useful in connection with operating quarries, coal, iron, ore or other mines, gas and oil wells, or plants for processing such products; to purchase real property especially containing deposits of minerals; to acquire mills or property useful in conducting its business; to acquire railways and other means of transportation. In general, the taxpayer was empowered to do everything necessary or incident to carrying on the business of mining, processing or marketing the minerals.

The first directors of the taxpayer were named in the articles of incorporation. They held their first meeting May 1, 1936. At this meeting by-laws were adopted. The appointment of a general counsel, a controller, two assistant secretaries, an assistant treasurer and assistant controller was announced and approved; stock form certificates were approved; the nine directors each subscribed to and paid for one share of stock; a transfer agent for transfer and registration of the stock and a registrar of the stock were approved. Resolutions were adopted authorizing taxpayer to intervene in the reorganization proceedings, to qualify it to do business in states other than Colorado, and to file the articles of incorporation wherever required; to authorize the acquisition of all books and records and other equipment as were necessary to carry on the business of taxpayer; and to authorize taxpayer to do all things necessary to carry out the reorganization agreement.

On June 26, 1936, a second meeting of the board of directors was held to authorize action to be taken by the taxpayer to carry out the reorganization agreement and the order of transfer of June 20, 1936. A large amount of routine business was transacted, including the approval of forms of indenture and bills of sale, mortgage assumption agreements, income mortgages, warrant agreements, and stock certificates. Resolutions were passed providing for the acceptance of the properties and assets covered by the transfer order of June 20, 1936, for calling a meeting of the stockholders, and for issuing $11,053,200 principal amount of income bonds. Resolutions were also adopted authorizing the continuance of pensions at rates then in effect, fixing salaries of various officers, granting old employees vacations, and authorizing the execution of papers necessary to obtain alcohol for the company hospital. No orders or contracts for the purchase or sale of property other than incidentals for the office were executed prior to July 1, 1936. Prior to that time, the total assets of the taxpayer consisted of the $315 paid by the directors for their qualifying shares of stock, and the seals, minute books, rubber stamps, and other similar items of equipment. No checks,

drafts or other evidences of indebtedness were either given or received by the taxpayer prior to July 1, 1936. No salaries or wages were paid and no income was received.

On September 18, 1936, the taxpayer filed a claim for exemption from the provision of Section 105 of the Revenue Act of 1935, as amended, Section 401 of the Revenue Act of 1936, based on the ground that it did not carry on business within the meaning of the Act during 1935. The claim was disallowed and the taxpayer was ordered to file its capital stock tax return. Taxpayer thereupon filed its capital stock tax return and paid under protest $20,632.88 capital stock tax and interest for 1935. It instituted its action in the District Court of the United States for the District of Colorado, seeking recovery of the sum so paid. Judgment was entered in its favor and from this judgment an appeal has been taken to this court.

■ The taxpayer was organized and incorporated to take over the business and assets of the bankrupt corporation, the Colorado Iron and Fuel Company. It had no assets of its own until the assets and property of the bankrupt were transferred by court order. The order of transfer provided that it should be made as of midnight June 30, 1936. Up to that time the operations were carried on by the trustee and were for the benefit of the old company. Of course, if, as a matter of fact, the taxpayer did engage in the business of mining and processing mineral products prior to that date, the order of transfer by the court would not shield it from the applicable revenue laws. For the test is whether the taxpayer actually did engage in business activities in furtherance of the purposes for which it was organized. Lewellyn v. Pittsburg B. & L. E. R. Co., 3 Cir., 222 F. 177; United States v. Three Forks Coal Co., 3 Cir., 13 F.2d 631; Del Norte Co. v. Wilkinson, D.C.Wis., 28 F.2d 876.

In order to carry on its business, it was necessary that taxpayer have an organization and an established system of transacting its business. It needed stationery,

various forms and office equipment. A large corporation carries on its business through many agents. Before it can engage in mining operations it must have managers, foremen, superintendents of the various departments, salesmen and many other representatives. Perfecting an organization to effectuate the purpose for which a corporation is created is not engaging in business.

■ It is contended that while most of the taxpayer's activities prior to July 1, 1936, were necessary to effect completion of its organization, nevertheless they were such as any other corporation carrying on its business was performing and therefore constituted doing business. If the acts done prior to July 1, 1936, were essentially for the purpose of perfecting the organization of the corporation, they would not constitute doing business as that term is ordinarily used, notwithstanding that they were in some respects the same as acts performed by a going business concern.

■ Prior to July 1, 1936, no drafts or other evidences of indebtedness were given or received, no salaries or wages were paid to anyone. The only cash received had been the $315 received from the sale of the qualifying shares of stock to the directors. No contracts were made and no operations of any kind were undertaken by the taxpayer. Passing resolutions continuing in force pension systems of the old company and its system of granting vacations for employees, and purchasing equipment and supplies for the office do not constitute doing business as that term is used when applied to a corporation organized for mining operations.

■ The operations of the taxpayer prior to July 1, 1936, related primarily to the completion of its legal entity and the setting up of its machinery so that it could do business for the purposes for which it was organized when the transfer was made July 1, 1936. An examination of the record leads to the conclusion that the taxpayer was not engaged in carrying on business within the meaning of the applicable revenue statutes.

The decision of the trial court is affirmed.