**CONTINENTAL BAKING CORPORATION v. HIGGINS, Collector of Internal Revenue.**

**No. 292.**

Circuit Court of Appeals, Second Circuit.

July 24, 1942.

Raymond F. Garrity and Andrew M. Hood, both of Washington, D. C., and Edward J. O'Connor, of New York City, for appellant.

Mathias F. Correa, U. S. Atty., of New York City (William L. Lynch and Robert L. Werner, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The plaintiff-appellant seeks to recover capital stock taxes paid by it pursuant to Section 105(a) of the Revenue Act of 1935, as amended by Section 401(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 798, in the amounts of $63,428.-97 and $60,179.24 for the years ending June 30, 1936, and June 30, 1937, respectively.

The applicable provisions of the statute read as follows:

"For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

The question before us, which the court below answered in the affirmative, is whether the appellant Continental Baking Corporation during the taxable years ending June 30, 1936, and June 30, 1937, was "carrying on or doing business" within the meaning of the foregoing provisions of the Revenue Act.

The plaintiff was organized in 1924 for the purpose of acquiring a chain of baking companies. During the period of its existence it acquired various operating, intermediate holding and management companies and at one time had in the chain thirty-eight operating companies, three intermediate holding companies and one management company. After the acquisition of these companies it proceeded to rehabilitate them to a point where financing would be unnecessary to acquire minority interests, and, in so far as was then possible and desirable, to effect consolidations.

In order to simplify the form in which the corporate enterprises were being conducted and to save the expense of paying a capital stock tax under the Act of Congress passed in the year 1933, plaintiff's officers reached a decision in that year that it should thereafter act purely as a holding company.

During the years 1936 and 1937 annual stockholders' meetings were held, as well as meetings of the directors and finance committee. Plaintiff kept books of account and stock transfer books and maintained bank accounts. It owned and voted by proxy the entire outstanding capital stock of Continental Baking Company, United Retail Bakeries, and, after February 25, 1936, when the latter was liquidated, of Hall Baking Company. Plaintiff thereby elected the directors of those com-

panies and through one of its officers signed waivers of notice of stockholders' meetings and proxies for such meetings. It also issued semi-annual financial statements to its 20,000 stockholders. These embraced consolidated balance sheets of the plaintiff and its subsidiaries, contained statements about the condition of the business of the enterprise and the merits of various products made by the subsidiaries and gave credit "for splendid teamwork * * * to the personnel of our entire organization." Ever since 1926 its stock had been listed on the New York Stock Exchange and actively traded in. On February 1, 1939, it entered into an agreement with Continental Baking Company by which it merged with the latter, the stockholders of plaintiff receiving in exchange for their stock a new issue of stock of Continental Baking Company. The president of the Corporation testified that the companies were not merged sooner because of anticipated difficulties in getting stockholders' consents. The directors of Continental Baking Company, Hall Baking Company and United Retail Bakeries were all directors of the plaintiff. M. Lee Marshall was chairman of the board and president of all four corporations. Samuel F. MacDonald was vice-president of each and each had the same secretary and treasurer and assistant secretary and assistant treasurer. The Corporation's board was composed of eleven directors; Continental Baking Company's of five; Hall Baking Company's of three, and United Retail Bakeries' of three. The directors of the last three corporations were also directors of the plaintiff.

By 1933 the number of plaintiff's subsidiaries and affiliated companies had been reduced to thirteen operating companies, one management company and two intermediate holding companies. As of December 31, 1933, the thirteen operating companies were merged into two operating companies, namely, Continental Baking Company and Hall Baking Company. The latter corporation was owned through an intermediate corporation known as United Retail Bakeries. A part of the plan of consolidation which had proceeded up to December 31, 1933, was the elimination of United Retail Bakeries, a holding company which the plaintiff still controlled but could not liquidate because of outstanding preferred stock held by others. On October 1, 1935, United Retail Bakeries called this pre-ferred stock, and was itself liquidated on February 25, 1936, and dissolved on March 10, 1936.

The plaintiff acquired 10,000 shares of its Class A Common Stock in 1927 for $546,-633.44 in order to have it available for delivery against certain options which it negotiated with the executive officers of its management company. The value of the stock was written down to $50,-000 in the year 1931 and in December, 1932, the option expired without having been exercised. The plaintiff continued to hold the shares in its treasury until it sold them in the open market for $151,-821.55 on January 13, 1936. On the same date it sold 2,919 shares of its Class B Common Stock for $5,777.03. This stock was part of an original issue which had been returned to the company at the time of its organization for use in the sale of its preferred stock and had been held in its treasury since 1927.

During the taxable years in suit plaintiff had no investments in property other than in the capital stock of its subsidiary companies; owned no office furniture or equipment; had no employes other than its officers; used the same office space as its subsidiaries but paid no rent; invested none of its surplus funds for profit and made none; and its only income was the receipt by it of dividends from its subsidiary companies, all of which dividend income, after providing for expenses, was paid as dividends to its own stockholders.

Upon the record before the District Court, which we have summarized, it was held that the plaintiff during the taxable years 1936 and 1937 was "carrying on or doing business" within the meaning of the statute and Regulations thereunder. In our opinion the activities of the plaintiff were not sufficient to justify such a conclusion and the judgment dismissing the action to recover the capital stock taxes should be reversed.

It is hardly necessary to refer to the authoritative decisions that a bare holding company which does no more than to hold meetings, vote its stock in subsidiary operating companies upon which dividends are declared, and distribute these dividends to its stockholders, is not "carrying on or doing business" in such a way as to subject it to a capital stock tax. We cannot see that the listing of its stock on the New York Exchange affected its sta-

tus as a holding company. The stock had been so listed for years before 1936 and 1937 and the continuance of that listing had nothing to do with its business activities but was a step taken only for the convenience of stockholders who wished to deal in its shares. The holding of meetings only related to the control of its internal affairs and its function as an existing corporation rather than to any business activity. The same considerations apply to the issuance of statements to its stockholders. References in these statements to the merits of some of the products sold by the operating companies would seem to have been made primarily to interest its stockholders in the source of the income which they received in dividends. While it doubtless was hoped that they would desire to purchase the products recommended, such a brief reference to matters of common interest can hardly be regarded as commercial advertising carried on in order to aid the subsidiaries. In any event it was too trifling a matter and one too remotely related to carrying on plaintiff's business to justify imposing a capital stock tax.

If there be any merit in the contention that the plaintiff was carrying on business during the years 1936 and 1937, it must rest on the two sales of treasury stock in January, 1936. Both the 10,000 shares of Class A Common Stock and the 2,919 shares of Class B Common Stock were held in the treasury. The sales were isolated transactions and no other transactions of purchase or sale occurred during the taxable years. Moreover, Article 43(b) (1) of Treasury Regulations 64 (1936 Ed.) classifies as an instance in which a corporation is not doing business " * * * activities * * * such as:

"(1) the issuance and sale of its stock for cash as a preliminary step in the completion of its organization; * * *"

■ There can be no practical difference between a sale of an original issue and a sale of treasury stock. The 10,000 shares of Class A Common Stock had been purchased years before to fulfill options negotiated with the executive officers of the management company. They were released for issue after the options expired, and it had then become quite natural for the plaintiff to dispose of them for what it could get. The sale of the Class B shares was a trifling matter in view of the size of the corporation and properly disposed of

a remnant of stock which had long been held in the treasury for disposition in connection with sales of preferred shares and was no longer useful for that purpose. Isolated sales such as these are held insufficient to subject a corporation to the capital stock tax. General Ribbon Mills v. Higgins, 2 Cir., 115 F.2d 472; Rose v. Nunnally Inv. Co., 5 Cir., 22 F.2d 102; United States v. Three Forks Coal Co., 3 Cir., 13 F.2d 631.

■ It is further contended that the exchange of the plaintiff's United Retail Bakeries' stock for the latter's stock in Hall Baking Company, followed by the dissolution of United Retail Bakeries on January 10, 1936, was a transaction which subjected the plaintiff to the incidence of the taxing statute. But the transaction was merely a liquidation designed to eliminate an intermediate holding company as a step in the plan of consolidation and did not amount to "carrying on or doing business." General Ribbon Mills v. Higgins, supra.

The recent decision of the Supreme Court in Magruder, Collector v. Washington, B. & A. Realty Corp., April 13, 1942, 316 U.S. 69, 62 S.Ct. 922, 86 L.Ed. ——, is not contra. There a corporation organized to liquidate rights of way, terminals, and other real estate which had been purchased at a foreclosure sale by a bondholders' committee of the Washington, Baltimore & Annapolis Railway Company, proceeded to sell the property acquired. It was held that the liquidating corporation was carrying on business within the meaning of the statute. The liquidating corporation was not a holding company at all but one whose corporate activity was liquidation through sales of real estate and whose organization was for that very purpose. The activities of the plaintiff were only those of a quiescent holding company such as fall within the exceptions set forth in Treasury Regulations 64, Article 43(b), (2), and not within Article 43(a) (5), as did those dealt with in Magruder, Collector v. Washington, B. & A. Realty Corp., supra.

■ The suggestion that the identity of the directors and officers of the various affiliated corporations indicates that the plaintiff was actively interfering with the conduct of the business of the operating corporations and thereby had a status other than that of a mere holding company

is not borne out by the evidence. The statement of its president to the contrary is met only by evidence elicited on cross examination of the secretary-treasurer of all the companies who testified that directors of Continental Baking Corporation were "kept * * * informed of our operations" and that the financial statements of the subsidiaries were discussed and reviewed. To have done less than these directors did would have been to neglect their· obvious duties and their legal obligations. They were bound not only to be familiar with the situation but as fiduciaries for the sole stockholder, to keep themselves in a position, in which by removal of the directors of the operating companies at the next corporate elections or by other appropriate means they would be able to check any neglect or abuse on the part of such companies. To maintain the status as a holding company was far different from actively interfering in the business of the subsidiaries. Indeed, the proof indicated that Continental Baking Company, which finally by merger absorbed the Continental Baking Corporation, was the controlling factor in the corporate enterprises during 1936 and 1937 and thereafter. It is evident that the plaintiff was doing no more than to continue its corporate existence in preparation for its own demise as a separate corporation.

Judgment reversed and case remanded with directions to enter judgment for the plaintiff for the amount of the capital stock taxes erroneously collected in 1936 and 1937, with interest thereon.