**LAMAR HOTEL CORPORATION v. FLY,**
Collector of Internal Revenue.
No. 10429.

Circuit Court of Appeals, Fifth Circuit.
March 10, 1943.

---

J. C. Floyd, of Meridian, Miss., for appellant.

Arthur Manella and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Toxey Hall, U. S. Atty., of Jackson, Miss., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to recover as overpaid $135.00 capital stock tax assessed against and paid by appellant for the taxable year ending June 30, 1939. The claim in general was that within exception 43(b) (1) of Treasury Regulation 64,[1] plaintiff was not doing business within the meaning of Sec. 1200(a) 26 U.S.C.A. Int.Rev.Code.[2] In particular it was: that plaintiff was incorporated for the purpose of succeeding, and it did succeed, in reorganization proceedings, to all of the assets of the Meyer-Florida Hotel Company, including the Lamar Hotel; that as such successor it assumed the hotel management contract[3] that company had made with Interstate

---

[1] "A corporation is not subject to the tax if * * * although incorporated for the purpose of doing business, it has retired from the business for which it was organized and has reduced its activities to the mere ownership and holding of property, the distribution of its avails, and doing only such acts as are necessary to the maintenance of its corporate existence and the private management of its purely internal affairs."

[2] "Domestic corporations. For each year ending June 30, beginning with the year ending June 30, 1939, there shall be imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

[3] This contract, among other things, provided:

"The Management Company is hereby charged with the sole and exclusive management of such hotel property, and shall provide the owner with the services customarily provided for in such instances, etc."

"All funds derived from the operation of said property shall be deposited by the

Management Company in some Meridian bank or banks, to be expended by the Management Company in the operation of said property, the payment of taxes, insurance, workmen's compensation, liability premiums, principal on said bond issue, and any excess thereof to be duly accounted for annually to the owner in accordance with the provisions hereof."

"The Management Company shall have full power and authority to take all action and do all things necessary or reasonably proper to bring about an efficient operation of the property and the maintenance thereof as a first-class hotel, except as herein expressly provided for. The Management Company shall have the sole and exclusive right and authority to hire and discharge, from time to time, all employees necessary or reasonably proper for the operation of said property, and to fix their compensation, to approve allowances, and in its discretion to afford rooms, food and privileges to officers and employees of the Owner and of the Management Company, and to other persons, in accordance with the customs prevailing in hotels of such nature and size."

Hotel Company to manage and operate the hotel; and that being thus a mere holding company, it was not doing business and not subject to the capital stock tax.

The district judge, of the opinion that, upon the agreed facts,[4] plaintiff was doing business within the act, rejected plaintiff's claim and gave judgment for defendant. We agree with the district judge. Indeed, unless it can be said that plaintiff died a borning, it is difficult to understand how it can be said of a corporation organized for the very purpose of taking over and conducting the business of another corporation, that within the meaning of the invoked regulation, it has retired from the business for which it was organized.

Organized to enter, it immediately entered, upon the operation of the Lamar Hotel. Through the medium of the management contract which it had assumed, it made the necessary arrangements to receive and disburse that part of the earnings which it was to receive directly under the contract. Also, by advancing funds to the Interstate Hotel Co. and authorizing it to make necessary expenditures for it

and on its behalf, it actively participated with and through that company in the management of the business. In the light of all of the things that plaintiff was incorporated to and did do, to hold that, because plaintiff employed a corporation as manager and gave it, as manager, large powers, it was not itself doing the business it had just been incorporated to do would be to construe the statute so narrowly as almost to nullify it. It is not subject to such construction. On the contrary, with complete uniformity, the statute has been broadly, the exception from it narrowly, construed, Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678; Phillips v. International Salt Co., 274 U.S. 718, 47 S.Ct. 589, 71 L.Ed. 1323; Magruder v. Washington, Baltimore & Annapolis Realty Corp., 316 U.S. 69, 62 S.Ct. 922, 86 L.Ed. 1278; Page v. M. Rich & Bros. Co., 5 Cir., 99 F.2d 607; United States v. Peabody Co., 6 Cir., 104 F.2d 267; Harmar Coal Co. v. Heiner, 3 Cir., 34 F.2d 725; United States v. Hercules Mining Co., 9 Cir., 119 F.2d 288.

The judgment was right. It is affirmed.

---

"All costs, expenses, losses, or damages incurred in the operation of said property shall be paid from time to time by the Management Company from the funds which may be derived from the operation of said property."

[4] On September 15, 1937, the Meyer-Florida Hotel Co. issued $300,000 of first mortgage bonds, payable, with interest, at the rate of $15,000 per year for 9 years, the balance at the end of the tenth year, and on September 29, 1937, entered into the management contract, set out in Note 3, with Interstate Hotel Co. for the management of the Lamar Hotel until the final maturity of the bond issue. After executing both of these contracts, that company filed a 77 B., 11 U.S. C.A. § 207, reorganization proceeding in which its debts were scaled down and paid off by the organization of plaintiff which acquired the property subject to the management contract and issued its own first mortgage bonds in the amount of $300,-000, and in addition, second mortgage bonds for $27,500.00, and its note for $26,250. Plaintiff was chartered as a hotel company with the widest kind of powers to hold, manage and operate hotels, and it immediately adopted by-laws providing for the active control and management of its properties by its board of

directors. The board of directors by the by-laws was given all powers that might be legally exercised by the corporation, among them the power to purchase or otherwise acquire property rights or privileges for the corporation to adopt the plan of reorganization of the Meyer-Florida Hotel Company, to appoint agents, clerks and assistants, and generally, to manage the business of the corporation. Thereafter, plaintiff, through its board of directors, authorized the Interstate Hotel Co. to expend $40,000 for rehabilitation and repair of the hotel as provided in the contract between Meyer-Florida Hotel and the bondholders, and in addition, it turned over to the Interstate Company $10,000 as operating capital. A statement of receipts and disbursements from April, 1938, to October, 1939, discloses that the company received $13,333.73 from Interstate Hotel Co. and disbursed those sums in taxes, payments on the indebtedness, interest on the notes and other expenses, the effect of which was to reduce the debt and increase the equity of the company. Under the terms of management contract, plaintiff was to receive only part of its share of the earnings, the balance was to be disbursed by the Interstate Hotel Co. in payment of interest and of a portion of the principal on the mortgage bonds.