GOODYEAR INV. CORPORATION v.
CAMPBELL, Former Acting Collector of
Internal Revenue, et al.

No. 9486.

Circuit Court of Appeals, Sixth Circuit.

Dec. 2, 1943.

Thomas E. Lipscomb and David A. Gaskill, both of Cleveland, Ohio (Thompson, Hine & Flory, of Cleveland, Ohio, on the brief), for appellant.

James P. Garland, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Samuel H. Levy, and William A. Clineburg, all of Washington, D. C., and Don C. Miller and F. B. Kavanagh, both of Cleveland, Ohio, on the brief), for appellees.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

This appeal from a judgment dismissing appellant's suit for refund of a capital stock tax claimed to have been illegally assessed and collected for tax periods ending June 30, 1934, 1935, 1936 and 1937, involves the single question whether appellant was a corporation "carrying on" or "doing business" during such periods within § 701, paragraphs (a) and (c) (3) of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev. Acts, pages 787, 788.

The District Court rested decision inter alia upon assumption that the fulfilment by a corporation of its corporate purposes and functions constitutes carrying on business, and the appellee urges that a corporation is doing business if formed for a business purpose. This view is not supported by the language of the statute nor by the regulations, and has little support generally in the cases. Eaton v. Phœnix Securities Co., 2 Cir., 22 F.2d 497; Continental Baking Corp. v. Higgins, 2 Cir., 130 F.2d 164; United States v. Emery,

Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825. Since corporations, except those that are eleemosynary, for the most part are formed for business purposes, there would seem little reason, if purpose alone governed, in conditioning tax liability on the carrying on or the doing of business. The applicable test of tax liability, as hereinafter considered, appears to rest on the nature and extent of corporate activity.

The appellant was a corporate subsidiary of Goodyear Tire & Rubber Company and was projected as a depository for stock of other subsidiaries previously held by the parent corporation or other corporations of the Goodyear group. It was thought that a single holding company would simplify control and be of accounting convenience. All of appellant's stock was owned by the Tire Company, all but one of its directors were Tire Company directors, and the officers of both corporations were the same. The appellant had no office of its own, no bank account, no cash, no employees, and its officers as such received no compensation. Its books were kept by the Tire Company without charge, and its portfolio consisted entirely of stock of various other subsidiaries of the Tire Company. During the several tax periods there were some changes in its stock holdings, largely the result of writing off investments in German and Polish companies, though including some reclassification, the liquidation of several subsidiaries, and the organization of new ones. The changes were all instigated by the Tire Company.

In addition to its character as a stock-holding company, the appellant was entrusted by the Tire Company with two functions of slightly different character. The Tire Company desired a corporate trustee for its employee pension fund, and the appellant was designated as such. Its usefulness in this respect was passive and was confined to holding the securities and cash of the fund and reimbursing the Tire Company for payments made by it to pensioned employees. Some time after its incorporation the appellant took title to a single parcel of real property in Florida, on which was located a service station, the title to which had been held by Goodyear, Inc., another subsidiary. Goodyear, Inc., negotiated a lease for this property which the appellant ratified, appointing Goodyear, Inc., its agent to manage the property. The lease provided that the lessee would sell Goodyear products only, under penalty of forfeiture, obligated the lessor to repair the exterior of the premises when necessary, and reserved to the lessor the right of inspection. Actually, Goodyear, Inc., performed all the duties of the lessor under the lease, collected rents which were credited to appellant, and in the single instance when negligible repairs became necessary, made them and charged their cost to the appellant.

The appellant's income, except for rentals from the Florida property, was derived exclusively from dividends on securities held by it. Upon this income it annually paid an income tax. It claimed, and was allowed, deductions for office expenses which consisted principally of capital stock taxes here involved. Its receipt of income was purely a bookkeeping transaction, the dividends of subsidiaries being paid directly to the Tire Company, by it credited to the appellant, and the credit utilized in payment of dividends to the Tire Company as appellant's sole stockholder.

As long ago as 1927 it was thought by the Second Circuit Court of Appeals in Eaton, Collector, v. Phœnix Securities Co., supra, that nothing then could be gained by an extended discussion of the activities which constitute the carrying on or the doing of business by a corporation,—a subject then designated as "tangled." To some extent it has so remained. From the authorities there cited, including Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678; McCoach v. Minehill & S. H. R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842; United States v. Emery, Bird, Thayer Realty Co., supra, and Zonne v. Minneapolis Syndicate, 220 U.S. 187, 31 S.Ct. 361, 55 L.Ed. 428, it was concluded that a mere holding company was not liable for tax upon its corporate stock, and that it does not make any difference whether the property held be corporate shares or realty, or whether the income be dividends or rent. It was there recognized that Phillips v. International Salt Co., 274 U.S. 718, 47 S.Ct. 589, 71 L.Ed. 1323, might perhaps be the forerunner of a stricter rule, though the holding company there actually aided in financing an operating company and guaranteed securities of its subsidiaries. As much might have been said of Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460, where a corporation employed an independent corporation to supervise mining operations conducted by a lessee, tested undeveloped

properties, and was, through these incidents, held to be engaged in business. The court after considering its previous decisions, said, "The fair test to be derived from consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such acts as are essential to those purposes." That the foreshadowing of a somewhat stricter rule was not without justification, is, perhaps, indicated by the recent case of Magruder v. Washington, B. & A. Realty Corp., 316 U.S. 69, 62 S.Ct. 922, 86 L.Ed. 1278, where it was held that a corporation organized expressly for the purpose of liquidating a defunct railroad, and in so doing made short term leases, paid taxes and dividends, maintained offices, paid salaries and attorney's fees, was engaged in business within the purview of an administrative regulation which specifically covered the situation. But, as pointed out in Continental Baking Corp. v. Higgins, supra, decided since the Magruder case, the liquidating corporation in that case was not a holding company at all but one whose corporate activity was liquidation through sales of real estate and whose organization was for that very purpose. The activities of the Continental Baking Company were held to be only those of a quiescent holding company though of far wider reach than the corporation here considered, and were held to fall within the exceptions set forth in Treasury Regulation 64, Article 43(b) (2), and not within Article 42(a) (5) as did those dealt with in the Magruder case.

In respect to the appellant's employment as record holder of the securities of the Tire Company subsidiaries, the collecting of dividends thereon and the payment of such dividends by bookkeeping entries to its sole stockholder, we are unable to conclude otherwise than that the appellant was a pure holding company, was not carrying on or doing business within the meaning of the statute, and was not liable, by reason of such functions, to a tax upon its capital stock under the applicable provisions of the Revenue Act. Nor did its function as trustee for the pension fund require its classification as a corporation engaged in business. It was a mere trustee, received no compensation, made no profit, and engaged in no activity, whatsoever, of a business nature.

The holding by the appellant of title to the Florida service station is the only activity, if activity it be, that has given us difficulty, and this springs from an illustration in Article 43 of Treasury Regulations 64, which, though it classifies in subparagraph (b) (2), among cases which are exceptions to doing business, "the distribution of the avails of property and the doing only of such acts as may be necessary for the maintenance of its corporate status in the case in which the corporation either was organized for, or has reduced its activities to the mere owning and holding of specific property," illustrates an activity that does not come within this exception: "(B) If in addition to the activities described in paragraph (b) (2) it engages in any other activity such as * * * (ii) in the case of a company which has leased its property to another, the maintaining or keeping the property in repair in accordance with the terms of the lease, or in other activities necessary to enable the lessee properly to manage the leased property, regardless of whether such activities are performed on its behalf and under the order of the lessee or that such acts are not of major importance;".

If, in consideration of the first clause of subdivision (ii), it is to be literally construed to the effect that a company which has leased its property to another and has obligated itself to maintain or keep the property in repair, is subject to the capital stock tax, then it must follow that there may not be a pure holding company of improved real estate exempt from the tax, for rarely will there be found a lease of such property which does not oblige or permit the lessor to repair his property if the lessee fails to do so, and rarely will be found a lease of such property which does not permit the lessor to inspect his property to ascertain whether the lessee is performing under the lease, and, we dare say, never will there be found a lease which does not permit the lessor to forfeit or terminate the lease in the event of a breach of its covenants.

It is doubtful that the Congress intended to exempt from the capital stock tax a pure holding company engaged in no activity but the ownership of securities and collecting and distributing dividends thereon, and to tax a pure holding company of im-

proved real estate engaged in no activities but the collection of rents and the safeguarding of its interests under the terms of the lease. There is no reasonable basis for such distinction and the controlling cases would seem to indicate that there is none. The corporation in McCoach v. Minehill & S. H. R. Co., supra, held title to leased railroad property from which it collected rents,—it was not carrying on business. In United States v. Emery, Bird, Thayer Realty Co., supra, a corporation was organized to hold title to property and lease it to its parent company, receiving rents from the parent and distributing them to the stockholders, the lease providing that the lessor was to rebuild if the property should be destroyed,—the corporation was not doing business. As was observed in Eaton v. Phœnix Securities Co., supra, already noted, "We cannot believe that it makes any difference whether the property held be corporate shares or realty, or whether the income be dividends or rent." It will be noted that in Magruder Realty Corp., supra, the case of Eaton v. Phœnix Securities Co., was cited without disapproval among those of the courts striving to fit close cases into one category or the other, among "the nuances of fact between the two extremes."

Superficially considered, Lamar Hotel Corp. v. Fly, 5 Cir., 134 F.2d 225; Fifth Ave.-Fourteenth Street Corp. v. United States, C.C., 45 F.Supp. 222, 96 Ct.Cl. 319, and our own case of United States v. Peabody Co., 6 Cir., 104 F.2d 267, would seem to indicate a contrary view. Each of these decisions may, however, be readily distinguished from the present case. The corporations in the first two cases were organized for profit. In the Lamar case the corporation owned a hotel, leased to an operating company which it financed. In the Fifth Avenue case the corporation's sixteen story office building was operated by a managing agent but the corporation retained the building under its control, and in the Peabody case the corporation had a surplus from its collections of rents which it invested from time to time in securities which it sold at a profit. Neither in kind nor extent were the appellants' activities comparable to those in the cited cases. Having taken title to the Florida real estate merely for the purpose of holding title, it became necessary to acquire the lease negotiated by its affiliated corporation and to receive the rents collected thereon. The appellant did not itself negotiate the lease, it made no profit on the operation, was not organized for profit, and did not finance its affiliated corporation which itself was not an operating company in respect to the property. The appellant was, in every realistic aspect, a pure holding company, with no business activity.

It may be observed in passing that our decision in the Peabody case was based largely upon our earlier decision in Kales v. Commissioner, 6 Cir., 101 F.2d 35, 122 A. L.R. 211, wherein it was held that a private investor expending most of her time and devoting most of her activity to such investments, was engaged in business so as to authorize a deduction for office rent, commissions, and attorney's fees in the handling of such investments, but that the decision in the Kales case was impliedly, if not expressly, disapproved in Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783, wherein a private investor engaged in comparable activities was held not to be carrying on a business, albeit decision was based upon the narrow ground that the facts were not sufficient, as a matter of law, to permit courts to reverse the Board of Tax Appeals where its conclusion was supported by the record. In the light of Higgins v. Commissioner, supra, our decision in the Peabody case loses much of its persuasiveness. Compare Rose v. Nunnally Investment Co., 5 Cir., 22 F.2d 102; Automatic Fire Alarm Co. v. Bowers, D.C.N.Y., 51 F.2d 118.

Our conclusion is that the holding of title to the Florida property, divorced as it was from active management thereof and from consideration of profit therefrom, does not bring the activity of the appellant within the purview of the regulations as a corporation subject to the tax, and that it falls within exception (2) of Article 43(b) as a corporation distributing the avails of property and the doing only of such acts as may be necessary for the maintenance of its corporate status.

Judgment reversed and cause remanded for proceedings not inconsistent herewith.