### HARRISBURG HOTEL CO. v. UNITED STATES.
### Civil Action No. 1088.

District Court, M. D. Pennsylvania.
Sept. 10, 1943.

Spencer G. Nauman, of Harrisburg, Pa., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Paul S. McMahon, Sp. Assts. to Atty. Gen., and Frederick V. Follmer, U. S. Atty., and Joseph P. Brennan, Asst. U. S. Atty., both of Scranton, Pa., for defendant.

WATSON, District Judge.

This action was brought to recover the amount of capital stock taxes assessed and paid for the taxable periods ending June 30, 1940, and June 30, 1941, together with interest. The case was tried without a jury and, from the evidence, the facts are found to be as follows:

Findings of Fact.

1. Harrisburg Hotel Company, the plaintiff, is a domestic corporation organized in 1916 under the laws of the Commonwealth of Pennsylvania, with its principal office at Harrisburg, Pennsylvania. The defendant, United States of America, is a corporation sovereign and body politic.

2. This action is for recovery of capital stock taxes and interest assessed against and paid by the plaintiff for the taxable periods ended June 30, 1940, and June 30, 1941. The taxes and interest involved were paid to Walter L. Rothensies, the only qualified and acting United States Collector of Internal Revenue for the First District of Pennsylvania, at Philadelphia, Pennsylvania, and for the use and benefit of the defendant United States of America.

3. Under the provisions of Section 601 of the Revenue Act of 1938, the plaintiff filed Federal Capital Stock Tax Returns for the 1940 and 1941 taxable periods on or about July 20, 1940, and September 24, 1941, respectively. On the face of each return exemption from the tax was claimed on the ground that the plaintiff was not doing business during the respective taxable periods.

4. The Commissioner of Internal Revenue denied the claims for exemption from capital stock taxes for the 1940 and 1941 periods made by plaintiff on the ground that the corporation was doing business for capital stock tax purposes. Thereafter, capital stock taxes in amounts computed upon the adjusted declared values of capital stock set forth by plaintiff in its 1940 and 1941 returns, with interest thereon, were assessed against the plaintiff and paid to the Collector of Internal Revenue as follows: For 1940, $1,876.50 on August 8, 1941; and for 1941, $1,281.46 on June 26, 1942.

5. Thereafter, and on or about October 14, 1942, plaintiff filed timely claims for refund of capital stock taxes and interest paid for the 1940 and 1941 taxable periods based on the ground that plaintiff was not doing business during the years involved.

The claims for refund were rejected by the Commissioner on the ground that the corporation was doing business for capital stock tax purposes and the plaintiff was notified of such rejection by registered letter dated December 4, 1942.

This action was timely commenced by filing the complaint herein on December 14, 1942. The complaint is based on the same ground as the claims for exemption and claims for refund filed by the plaintiff, i. e., that this corporation was not doing business for capital stock tax purposes during the taxable periods involved.

6. Harrisburg Hotel Company was organized in 1916, its principal charter purpose being "the establishment and maintenance of a hotel in the City of Harrisburg, Dauphin County, Pennsylvania".

The corporation completed erection of a modern hotel in Harrisburg in 1918. On December 4, 1918, plaintiff leased the hotel, equipment and furnishings, to one Frank A. Dudley for a period of thirty years from January 1, 1919. On December 4, 1918, Mr. Dudley assigned the lease to the Penn-Harris Hotel Company.

A supplemental lease dated January 2, 1925, was entered into between plaintiff and Penn-Harris Hotel Company covering an annex to the original hotel building. This lease is for a period of twenty-four years.

By agreement dated August 28, 1936, the original lease of December 4, 1918, and the supplemental lease of January 2, 1925, as modified by various other supplemental contracts and agreements, were extended for a period of ten years; to wit, from January 1, 1949, to January 1, 1959.

7. The Penn-Harris Hotel Company was incorporated for the purposes of operating and maintaining a hotel, and under date of December 4, 1918, as heretofore recited, the lease for the new hotel with Mr. Dudley was assigned by him to the Penn-Harris Hotel Company. Its common stock of two thousand (2,000) shares of a par value of two hundred thousand dollars ($200,000) was and is owned by the Harrisburg Hotel Company, in the amount of forty-eight per cent (48%), and by the United Hotels Company of America, Inc., in the amount of fifty-two per cent. (52%).

The number of directors was nine, and three of these directors—namely, Edgar Wallover, E. J. Stackpole, and Henderon Gilbert—were also directors of the Harrisburg Hotel Company. The other officers and directors were as follows:

President: Frank A. Dudley
Vice President: Charles P. Doherty
Secretary and
  Treasurer: George W. Reily
Director: Ronald C. Wright
Director: Spencer G. Nauman
Director: Charles F. Wilkes

All of the above are nominees of the United States Hotel Company which, as heretofore recited, owned fifty-two per cent (52%) of the stock of the Penn-Harris Hotel Company.

8. Under the terms of the agreement dated August 28, 1936, the Penn-Harris Hotel Company is required to pay for the full twenty-three year period until January 1, 1959, annual cash rentals to the Harrisburg Hotel Company as follows:

(a) Minimum rent per annum.... $100,000
(b) 100% of earnings over $100,000 and up to and including 110,000
(c) 40% of earnings over $110,000 and up to and including 125,000
(d) 65% of earnings over $125,000 and up to and including 175,000
(e) 75% of earnings over $175,000 ....................

During the taxable year 1940, the company received in rentals $120,686.13, and during the taxable year 1941, the corporation received in rentals the sum of $139,900.38.

Under the agreement of August 28, 1936, Harrisburg Hotel Company has the right to inspect the books and records of Penn-Harris Hotel Company to ascertain and verify the amounts of payments due.

9. The plaintiff paid nominal salaries to certain of its officers and incurred expenses in the maintenance of its corporate existence.

10. The plaintiff was not carrying on or doing business within the meaning of Section 601 of the Revenue Act of 1938, as amended, 26 U.S.C.A.Int.Rev.Code, § 1200.

## Discussion.

The sole question presented is whether or not the plaintiff was "carrying on or doing

business" within the meaning of the provisions of Section 601 of the Revenue Act of 1938, 52 Stat. 447, 565, as amended, 26 U.S.C.A.Int.Rev.Code, § 1200, which reads as follows: "For each year ending June 30, beginning with the year ending June 30, 1939, there shall be imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax * * *." This section, and substantially similar provisions, have been considered by the courts in numerous cases. An examination of these cases, however, reveals the futility of any attempt to formulate a definite rule. In the recent case of Magruder v. Realty Corp., 316 U.S. 69, 74, 62 S.Ct. 922, 924, 86 L.Ed. 1278, the Supreme Court states that the nuances of facts of the borderline decisions have produced a "nebulous field of confusion." That state of confusion remains substantially unchanged.

The taxpayer owned one hotel property which was leased to an operating company, and also owned a minority stock interest in the operating company. The taxpayer did not maintain an office for business purposes nor did it transact any business other than that incidental to the ownership of its hotel property and stock in the operating company. The taxpayer's activities were limited largely to collecting and distributing the rents received from its property and maintaining its corporate existence.

Insofar as the taxpayer's activities relative to the hotel property are concerned, it is clear that the taxpayer was not "carrying on or doing business". The hotel property was leased for a period ending in 1959, and the only activities of the taxpayer during the period here in question insofar as the hotel property was concerned consisted of collecting and distributing the rents received pursuant to the lease. These facts are substantially similar to those considered by the Supreme Court in the case of United States v. Emery, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825, wherein it was held that the taxpayer was not "carrying on or doing business" within the meaning of the statute.

The minutes of the meetings of the board of directors of the taxpayer indicate that the activities of the operating company were carefully considered by the taxpayer, but there is no evidence that the taxpayer exerted any influence or authority over the operating company other than that which was a necessary incident to its relationship

to the operating company as landlord and as minority stockholder. Consequently, its ownership of the stock of the operating company and its activities incidental thereto cannot be considered as "carrying on or doing business." Continental Baking Corporation v. Higgins, 2 Cir., 130 F.2d 164.

Under all the facts of this case, it is my conclusion that the taxpayer was not "carrying on or doing business" within the meaning of the revenue act here involved.

### Conclusions of Law.

1. The plaintiff was not "carrying on or doing business" within the meaning of 26 U.S.C.A.Int.Rev.Code § 1200(a).

2. The plaintiff is entitled to judgment.

A judgment in accordance with this opinion may be submitted.